SKILLERN *v.* THE WHITE RIVER LEVEE DISTRICT.

Opinion delivered May 12, 1919.

1. STATUTES—RE-ENACTMENT.—Acts 1919, No. 166, increasing the benefits in a certain levee district, although relating to the same subject-matter as Special and Private Acts 1911, p. 215, does not violate Constitution, article 5, section 23, requiring the re-enactment and publication at length of laws which are revived, amended, extended, or conferred, since such act does not amend the earlier act, but is an independent enactment.

2. LEVEES—ASSESSMENT OF BENEFITS—LEGISLATIVE POWER.—The Legislature may increase the assessment of benefits of a levee district at the rate of 6 per cent. per annum; to be cumulative and continuous until the indebtedness of the district is paid.

3. LEVEES—DELEGATION OF LEGISLATIVE POWER.—The Legislature may increase the benefit assessments of a levee district either directly or through a board of assessors.

4. LEVEES—VALIDITY OF STATUTE INCREASING BENEFITS.—Acts 1919, No. 166, increasing the assessment of benefits of a levee district *held* not void as imposing burdens on property owners in excess of the benefits to the land.

5. STATUTES — CONSTRUCTION — SURPLUSAGE.—Notwithstanding Acts 1919, No. 166, indicates a mistake of fact in regard to an indebtedness incurred because of a previous overflow, the statute must be given effect, the reference to such overflow being surplusage.

6. PLEADING—CONCLUSIONS.—In a suit to restrain a levee district from increasing assessments and issuing bonds, allegations that the indebtedness of the district will be thereby greatly increased to exceed the benefits, without alleging facts which show such to be the case, are insufficient.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; affirmed.

STATEMENT OF FACTS.

This action was instituted by the appellant against the appellees, as the Board of Directors of the White River Levee District, for the purpose of preventing them from increasing the assessments against his land and from issuing certain bonds.

The White River Levee District was created by Act 97 of the Acts of the General Assembly of the State of Arkansas for the year 1911. The act provided for the assessment of benefits by reason of the levee protection and authorized the levy of an annual tax upon the lands included in the district upon the benefits so assessed. The benefits to the lands, by reason of the building of the levee, were to be ascertained and assessed by a board of assessors chosen by the Board of Directors for that purpose, and, when the assessments were completed, they were to so remain until the next assessment was ordered by the board. The benefits were assessed by the board of assessors at $15 per acre. The district com-

prised several thousand acres of land in the counties of Woodruff, Monroe and Prairie. Act 104, volume 1, Acts 1917, p. 519, authorized the White River Levee District upon the petition of landowners, owning not less than seventy per cent. of the total acreage, to issue certificates of indebtedness to raise money to repair the levee, in emergency, when same had been damaged by overflow or other cause, or was in danger. After the passage of the act of 1917, a petition of the landowners of the district, in conformity with the statute, was filed in the chancery court and the court granted the petition and ordered that certificates of indebtedness be issued to secure funds for the purpose of repairing certain portions of the levee. The certificates of indebtedness thus authorized were not issued and the work of repairing the levee at that time was not performed. The Legislature of 1919 passed Act No. 166, which reads, in part, as follows:

"Section 2. On account of the levee improvement and the other work incident thereto, which has already been completed, and which is largely in excess of the improvement originally contemplated by the district, as well as the improvements now in process of completion, the benefits to the real estate therein, as heretofore fixed and determined, are hereby increased at the rate of six per cent. per annum; such increase of benefits shall be cumulative and shall continue from year to year until the present indebtedness of the district is fully matured and paid, and such annual installments thereof shall be effective on the first day of June of each year.

"Section 3. The majority of the landowners of said district having duly authorized said district to issue certificates of indebtedness not to exceed $100,000 for the purpose of paying the indebtedness of the district incurred during the overflow of 1918, and also for the purpose of raising funds to pay for the present necessary work of raising, strengthening and repairing the levee of said district, the Board of Directors of said district are hereby authorized to borrow a sum of money not in excess of $100,000 for the purpose of funding said certifi-

cates of indebtedness, and to issue therefor the negotiable bonds of the district, payable at such times as they deem best, and bearing a rate of interest not to exceed six per cent. per annum.''

The Legislature of 1919 also passed Act No. 178, section 1 of which reads as follows:

''The Board of Directors of the White River Levee District shall have the power to straighten the channel of Cache river as a means of protecting the lands of the district against inundations from the waters of said river, and may issue the bonds of the district in a sum not exceeding $150,000 and bearing interest at a rate not exceeding six per cent. for the purpose of raising the money to do such work.''

Appellant was the owner of land in the levee district. He set up the above statutes in his complaint and alleged that the original assessments of benefits amounted to $15 per acre on the lands; that the Board of Directors ''are proceeding to increase the benefits assessed'' against his lands and other lands of the district six per cent. per year for the year 1919. He alleged that no certificates of indebtedness were issued under the provisions of the act of 1917, but, notwithstanding that fact, the Board of Directors ''are attempting to issue and sell the negotiable bonds of the district to the amount of $100,000 under the provisions of Act 166, and $150,000 under Act 178 of the Acts of 1919.'' He alleged that the issue of bonds in these amounts ''will cause the indebtedness of the district to greatly exceed the benefits assessed against the lands of the district by the Board of Assessors; that the same is prohibited in the act creating said district and that, if such bonds are issued and sold, such action of the Board of Directors will create a cloud'' upon his title. He alleged that the acts of the board in increasing his assessments and issuing of bonds, above set forth, were unlawful and prayed that the Board of Directors be restrained from so doing.

The appellee demurred to the complaint on the ground that it did not state a cause of action. The court

sustained the demurrer and entered a decree dismissing the same for the want of equity, from which is this appeal.

*W. E. Trice,* for appellant.

1. Section 2 of act 166 is not valid. It seeks to amend the original act by reference to its title only without re-enacting it. This cannot be done, as it violates the Constitution. Article 23, section 6, Constitution 1874; section 5 Act No. 97. Increasing the assessments under act No. 166 alters the provisions of the original act and is void, as it merely extends the provisions of the old act and does not re-enact them. 52 Ark. 290; 49 *Id.* 131; 58 *Id.* 253.

2. There are no certificates of indebtedness outstanding and the board has no right to issue bonds. Act No. 166, § 3. This section is nugatory, as there are no certificates outstanding.

*Rose, Hemingway, Cantrell & Loughborough,* for appellees.

1. The provision for an annual increase of assessments of benefits is valid under act No. 166, § 2. 76 Ark. 197; 85 *Id.* 171. There is no constitutional prohibition. 99 Ark. 1; 112 *Id.* 342.

2. Section 3 of the act, 1919, is valid. The intent of the Legislature is clear and it should be upheld. 3 Ark. 285; 11 *Id.* 44; 28 *Id.* 203; 40 *Id.* 431. See also 80 Ark. 150; 86 *Id.* 518; 93 *Id.* 168; 94 *Id.* 422. Mere mistakes or errors will not invalidate an act. 109 Ark. 556. The intention must prevail. *Supra.*

WOOD, J., (after stating the facts). It appears from the allegations of the complaint that the Board of Assessors provided for in act 97 of the Acts of the General Assembly for the year 1911, creating appellee levee district, assessed the benefits to be derived from the protection afforded by the levee improvements contemplated, at $15 per acre. It further appears that the Legislature of 1919, by section 2 of Act No. 166, ''passed for the pur-

pose of aiding the White River Levee District," "increased the benefits to the real estate therein at the rate of six per cent. per annum." The act specified that: "Such increase shall be cumulative, and shall continue from year to year until the present indebtedness of the district is fully matured and paid."

Section 5 of act 97, creating the district, provides that the assessments of the Board of Assessors "shall be the assessments of the district until the next assessment shall be ordered by the Board of Directors." It is argued that section 2 of act 166, *supra,* alters and extends the provisions of section 5, *supra,* of the original act, creating the district, without re-enacting and publishing at length that section, and thus violates section 23, article 5 of the Constitution, which provides: "No law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length." Section 2 of act 166, *supra,* does not purport to, and does not in fact, amend or extend the provisions of section 5 of Act 97 of the Acts of 1911, "by reference to its title only or in any other way." The title of the act under review is "An act entitled an act in aid of the White River Levee District." It is a wholly independent enactment. True its effect is to repeal that part of section 5 of Act 97 of Acts of 1911 which reads: "And their assessment as equalized shall be the assessment of said levee district until the next assessment shall be ordered by the Board of Directors." But this is so because section 2 of act 166, *supra,* is a direct assessment of benefits by the Legislature and is in invincible conflict with that part of section 5 of act 97 last above quoted, which continues the assessment of benefits made by the Board of Assessors "until the next assessment shall be ordered by the Board of Directors." In *Scales* v. *State,* 47 Ark. 131-134, Chief Justice COCKRILL, speaking of the provision of the Constitution now under consideration, said: "It is well settled that this provision does not make it necessary, when a new statute

is passed, that all prior laws modified, affected or re-pealed by implication by it should be re-enacted.'' See also the opinion by him in *Watkins* v. *Eureka Springs,* 49 Ark. 131-134. The act therefore is not in conflict with section 23, article 5 of the Constitution.

It is also urged that the Legislature has no power to increase the benefits assessed by the Board of Assessors at the rate of six per cent. per annum and to make same cumulative and continuous until the existing indebted-ness matured and was paid. It is the settled law in this State that the Legislature may act directly in assessing benefits to accrue from local improvements which it has authorized, and the ''legislative determination should be and is conclusive unless it is arbitrary and without any foundation in justice and reason.'' *Salmon* v. *Board of Directors,* 100 Ark. 366; *Moore* v. *Board of Directors of Long Prairie Levee District,* 98 Ark. 113, 116-117; *Board of Improvement* v. *Pollard,* 98 Ark. 543, and cases cited. Since under these decisions the Legislature has the power primarily to determine the value of the benefits to be de-rived from a local improvement, it follows as a neces-sary corollary to this doctrine that the Legislature may increase the original amount of the benefit assessment whether same was made directly by it or by a board of assessors to which the power had been delegated. The exercise of the power in the first instance did not exhaust it. The Legislature could continue to exercise the power until the purpose in creating the levee district had been consummated. The method prescribed in section 2 of act 166, *supra,* by which the Legislature determined that the amount of the value of the benefits which would ac-crue to the lands, by reason of the improvement, would be represented by a sum consisting of the original assess-ment of $15 per acre at rate of 6 per cent. per annum thereon, to be cumulative and to continue from year to year until the indebtedness of the district was mature, was within the province of the Legislature. The amount of the value of the benefits could be easily and definitely ascertained by this method, because it fixed with cer-

tainty the time of the interest to run as the date when the then indebtedness of the district matured. In *Oliver* v. *Whittaker,* 122 Ark. 291, the court held that assessments of benefits could be made to bear interest at the rate of 6 per cent. per annum, under a statute which provided that "the deferred installments of the assessed benefits shall bear interest at the rate of 6 per cent. per annum and should be payable only in installments as levied." In construing this provision, the court said that it was not intended "to authorize the imposition of any burden in excess of the actual value of benefits to the property together with interest on deferred payments." So it may be said here that there was nothing in the language of the act that reveals any intention on the part of the Legislature to impose any burden upon the property in excess of the value of the benefits to the lands.

The appellant further contends that the board had no authority to issue bonds under the third section of Act 166, *supra,* for the reason that at the time of its passage there were no certificates of indebtedness outstanding, inasmuch as the work contemplated by the act of 1917 was never performed and no certificates of indebtedness were actually issued under the authority of such act. But the language of section 3 of act 166, *supra,* shows that the board was authorized to issue certificates of indebtedness in the sum of $100,000 not only for the indebtedness of the district "incurred during the overflow of 1918," but also "for the purpose of raising funds to pay for the present necessary work of raising, strengthening, and repairing the levee of said district."

Although it appears from the allegations of the complaint that the Legislature made a mistake in finding that there was a present indebtedness against the district for work done during the overflow of 1918, yet the language of the third section of the act shows that the Legislature was not under any misapprehension as to the existing necessity of raising, strengthening, and repairing" the levee of the district. There are no allegations of fact in the complaint showing that the necessary work to be done, in

order to effectuate the purpose in building the levee, namely, to protect the lands from overflow, would cost less than the sum of $100,000. To be sure, the Legislature would have no power to authorize the issuance of bonds to liquidate an indebtedness which had not been, and which would never be, incurred. But taking the language of the act as a whole it clearly evinces the purpose to provide a fund to be expended in necessary work on the levee.

Being convinced that such was the intention of the Legislature from the language employed, it is our duty to give effect to the statute, even though some of the language indicates that it was used under a mistake of fact. The words "incurred during the overflow of 1918" should be treated as surplusage, and could and should, be eliminated in order to carry out the manifest purpose of the Legislature. This view is in accord with recognized canons for the correct interpretation of statutes, as announced by the best authors on the subject, and often approved by our own court. See Lewis' Sutherland on Stat. Con., secs. 363 to 384, inclusive, also secs. 489, 490; Endlich on the Int. of Stat., sec. 365, chap. 4, sec. 73, sec. 264, 265; *Bowman* v. *State,* 93 Ark. 168; *Garland Power & Dev. Co.* v. *State Board of R. R. Incorp.,* 94 Ark. 422; *Snowden* v. *Thompson,* 106 Ark. 517; *State* v. *Trulock,* 109 Ark. 556; *Nakdimen* v. *Ft. Smith & Van Buren Bridge Dist.,* 115 Ark. 194; and other cases cited in 4th Crawfords's Digest, p. 4677, sections 53, 54, 55.

It is alleged in the complaint that the issues of bonds under Acts 166 and 178, *supra,* will cause the indebtedness of the district to greatly exceed the benefits assessed against the lands of the district, but no facts are alleged to show that such is the case. In *Moore* v. *Board of Directors of Long Prairie Levee Dist., supra,* we held that the courts cannot review "merely on general allegations that the assessments are arbitrary, excessive, and confiscatory." Facts must be pleaded which show that the decision of the law makers was not merely erroneous, but that it was manifestly outside of the range of the facts.

In disposing of the allegations of the complaint on demurrer and ruling that act 178 of the Acts of 1919, *supra,* is not open to the objection here urged against it, we reserve our decision as to its validity if its constitutionality should be challenged on other grounds.

Finding no error in the ruling of the court, its judgment is affirmed.