MASSEY v. ARKANSAS & MISSOURI HIGHWAY DISTRICT IN
PULASKI COUNTY.

Opinion delivered March 3, 1924.

1.  HIGHWAYS—NOTICE OF ASSESSMENT.—Special Acts 1923, p. 380,
    amending Acts 1919, No. 82, creating the Arkansas & Missouri
    Highway District, by adding thereto a road described in section
    five, and providing in section thirteen for assessment of benefits,
    without providing for notice of assessments and a hearing
    thereon, *held* not void, since the act does not authorize a separate
    improvement, but merely provides for the improvement of a
    new road as a part of the unit of improvement provided for by the
    act of 1919, and the provisions of the latter act as to notice
    and hearing are applicable to assessments under the act of 1923.

2.  CONSTITUTIONAL LAW—PROVINCE OF LEGISLATURE.—It is within the
    power of the Legislature to determine what shall constitute a

unit of improvement, and such determination will not be disregarded by the court unless it is arbitrary and unreasonable on its face.

3.  HIGHWAYS—MODE OF LEVYING ASSESSMENT.—The provision of the act of 1919 (No. 82) that the county court should levy the assessment of benefits in the Arkansas & Missouri Highway District was repealed by the act of 1923, p. 380, which provided that the levy should be made by the commissioners of the district.

4.  HIGHWAYS—REQUIREMENT OF VOTE OF LANDOWNERS.—Acts extraordinary session 1923, p. 11, § 25, prohibiting road improvement districts from making improvements and issuing bonds unless authorized by a vote of a majority in number and value of the landowners within the district, *held* inapplicable to the construction of the road added by Special Acts 1923, p. 380, to the Arkansas & Missouri Highway District created by Acts 1919, No. 82, since the latter district had already let construction contracts and issued bonds, and commenced construction work.

5.  HIGHWAYS—LIMIT OF ANNUAL ASSESSMENT.—Under Special Acts 1923, p. 385, § 13, limiting the amount of a highway assessment to 4 per centum for any one year, an annual levy of 5 per centum of the cost of the improvement was upheld, since the 5 per centum will not amount to more than the principal at 4 per centum and the interest on the installment of a given year.

6.  HIGHWAYS—LIMIT OF ASSESSMENT.—Special Acts 1923, p. 385, § 13, limiting the assessment of benefits in Arkansas & Missouri Highway District created by Acts 1919, No. 82, to 4 per centum for any one year, with 10 per centum added for unforeseen contingencies, *held* not in conflict with act of 1919, authorizing inclusion of interest on delayed installments at the rate of 6 per centum per annum.

7.  HIGHWAYS — COLLATERAL ATTACK ON ASSESSMENT.— Actions by landowners attacking the assessments of benefits in a highway district, not brought within 20 days after assessment was filed with the county clerk, as required by the statute, constituted a collateral attack, within the rule that the assessment will not be disturbed unless shown on its face to be arbitrary.

8.  HIGHWAYS—COLLATERAL ATTACK ON ASSESSMENT—EVIDENCE.—In an action by landowners attacking the assessment of benefits in an improvement district, evidence *held* insufficient to prove that the actual value of benefits was not considered in making assessments.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Will G. Akers,* for appellant Massey.

The assessment and the levy are void on their face. 151 Ark. 489; 150 Ark. 525; 153 Ark. 593. The rule applied in *White* v. *Highway District,* 147 Ark. 160, and that applied in *Swepston* v. *Avery,* 118 Ark. 294, have been violated by the assessment of August 3, 1923, and it is therefore void. Act 198 of 1923 is in principle identical with the acts heretofore held void in the case of *White* v. *Highway District, supra.* The records show no referendum and no expression of the landowners in favor of the continuance of the work, as is contemplated by act No. 5, extraordinary session 1923, § 25.

*J. C. Marshall, Henderson & McConnell,* and *Cockrill & Armistead,* for appellants.

1. The assessment and levy of taxes are each void on the face and subject to collateral attack.

(1) Section 13 of act 198 provides that the levy made shall not exceed four per cent. for any one year. The act refers only to the Prothro Gin road, but the assessment and levy are combined for all purposes, and the order of levy made by the commissioners is for five per cent. per annum on the assessed benefits for 25 years.

(2) Act 82 provides by § 8 thereof that the levy of tax shall be made by order of the county court. This necessarily applies to any reassessment. Act 198 provides that the levy thereunder, which could only be for the Prothro Gin road, shall be made by order of the commissioners.

(3) The assessment is so grossly excessive as to be void on its face. The estimated cost of improvement filed August 3, 1923, inclusive of ten per cent. for contingencies, amounts to $556,866 for new work; there is added the "cost of work previously done," $761,071.10; yet the levy of tax is for 125 per cent. of $1,919,962, or $2,400,000. 150 Ark. 199; 151 Ark. 489; 150 Ark. 525; 139 Ark. 431; 97 Ark. 330. The assessment is admitted to be for expenditures in excess of the previously assessed benefits. Such expenditures are clearly illegal. 119 Ark. 199; 153 Ark. 593.

(4)   The assessment is void because it blankets the project of act 198, which is distinct, with the projects of the earlier acts, and those not covered by any law, such as the Third Street lateral, and those covered by void laws, such as the East Ninth Street project, and also combines in the mass costs incurred in excess of the previous assessment of benefits, which represent illegal expenditures.   147 Ark. 165; 118 Ark. 294.

(5)   The assessment is void because it is a reassessment without notice.   Act 82, §§ 15, 16.

2.   By reason of the fact that no assessment is provided for in act 198, by reference or otherwise, the one now made is void for the reason given in the White case, 147 Ark. 160.   158 Ark. 519; 159 Ark. 569; 142 Ark. 52, 59.

*Rogers, Barber & Henry* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1.   It is fundamental in this State that every improvement must be a unit, with a single assessment for the entire work.   Here there is an actual continuity of roads, so that there is no gap anywhere that has to be bridged over.   That such a system of roads constitutes a single improvement no longer admits of question.   125 Ark. 325; 137 Ark. 354; 139 Ark. 595; 138 Ark. 549; 142 Ark. 552; 144 Ark. 46; 150 Ark. 127; 135 Ark. 524; 147 Ark. 164.

2.   The assessment of benefits, representing the views of the assessor, a man chosen because of his peculiar qualifications for the work, and of the board of commissioners, a body of business men residing in the district, who sat with him, in its equalization, will not be disturbed by this court, unless abuse is shown, and it affirmatively appears that no benefit can accrue from the improvement.   134 Ark. 14; 143 Ark. 203, 204; 151 Ark. 484; 155 Ark. 89; 139 Ark. 277; 144 Ark. 632; 147 Ark. 469; *Id.* 363; 153 Ark. 587; 159 Ark. 84; 98 Ark. 544; 133 Ark. 125; 139 Ark. 322; 141 Ark. 164; 251 S. W. 12.

3.   The suit was brought too late.   The act 198 provides that the assessment and tax levy shall be conclusive

unless an appeal is taken within twenty days from the time the assessment of benefits is filed with the county clerk.   Such a limitation is valid.   139 Ark. 567; 151 Ark. 484; 152 Ark. 422; 158 Ark. 330.   Any complaint which is essentially an attack upon the assessment of benefits must be filed within the time limited.   150 Ark. 443; 151 Ark. 484; 155 Ark. 89; 144 Ark. 642; 147 Ark. 469; *Id.* 363; 153 Ark. 587; 159 Ark. 84; 98 Ark. 544; 134 Ark. 14. When taxpayers stand by and permit improvements to be made, they will not be allowed to defeat the taxation necessary to pay for the benefits which they have received. 158 Ark. 58; 55 Ark. 148; 47 Ark. 269; 43 Ark. 275; 81 Ark. 244; 79 Ark. 229; 116 Ark. 377; 96 U. S. 341; 177 U. S. 67; 161 U. S. 200; 98 U. S. 308; 151 U. S. 294.

4.   There is no merit in the contention that the notice of the assessment is void.   The mere fact that it is a second assessment of benefits does not involve any difference in the notice.   It is exactly in the form prescribed by the statute, act 82 of 1919, § 16.   And this section, which counsel apparently overlook in contending that there can be no reassessment of benefits unless there is a change of plans, refutes that contention.   And the authority to make a complete reassessment is upheld in 145 Ark. 438, and 153 Ark. 635.

5.   The assessment of benefits properly covers work already done.   43 Sup. Ct. Rep. 261; 139 Ark. 347-8; 156 Ark. 267; 154 Ark. 554.

6.   The tax levy is not in violation of the statute. Act 82 of 1919, § 7; act 198 of 1923, § 13.   The 4 per cent. referred to in the act of 1923 is the same as the 5 per cent. referred to in act 82 of 1919, providing that ''all such assessments shall be made payable in installments, so that not more than 5 per cent. shall be collected in any one year, against the wishes of landowners; and in the event that any landowner avails himself of this indulgence, the deferred installments of the assessed benefits shall bear interest at the rate of 6 per cent. per annum.'' 122 Ark. 291; 141 Ark. 238; 139 Ark. 4; 144 Ark. 495; 145 Ark. 487.

7.    There is no foundation in fact for the contention that the levy is so grossly excessive as to be void on its face.    From the tables showing the maturities of the two bond issues, it appears that the face of said obligations, with interest added, plus the statutory 10 per cent. for contingencies, will amount to the exact sum which has been levied by the commissioners.    This 10 per cent. margin is essential, not only to provide a fund to pay the cost of collection, etc., but also to cover deficiencies caused by the failure of some taxpayers to pay their taxes.    139 Ark. 431; 147 Ark. 450.

McCULLOCH, C. J.    There are before us two separate actions involving the same subject-matter, namely, an attack on the validity of a statute authorizing the improvement of a public road in Pulaski County, and also an attack on the assessment of benefits and other proceedings of the board of commissioners.    The two cases are consolidated here, and both will be disposed of in this opinion.

The Arkansas & Missouri Highway District in Pulaski County was created by act No. 82 of the General Assembly of 1919, and its validity was upheld by this court in the case of *Van Dyke* v. *Mack,* 139 Ark. 524.    That statute authorized the selection of the route of the road by the commissioners of the district, and the road selected by the commissioners runs from the north end of Main Street, in the city of North Little Rock, in a general northeasterly direction, to the Lonoke County line.    Another part of the route was selected along East Third Street, in the city of North Little Rock, running from what is known as the Galloway Pike eastward to Main Street. Later, in the same session of the General Assembly, act No. 128 was passed, authorizing the addition of another route, known as the Jacksonville lateral and running east from Main Street in North Little Rock at Thirteenth Street, out that street, in an easterly direction to the city limits, and thence to Booker, on the line of the railroad, thence to Jacksonville, and thence northeast along a specified route to a junction with the other route

selected by the board of commissioners, known as the
main line.

During the extraordinary session of 1920 the General
Assembly passed separate statutes authorizing the con-
struction of certain laterals, designated, respectively, as
the Tate's Mill lateral, the East Ninth Street lateral, and
another lateral, but all of these last mentioned were
stricken down as invalid under the decision of this court
in the case of *White* v. *Arkansas & Missouri Highway
District,* 147 Ark. 160.

It appears from the proof in this case that, under
the original statute creating the district and under act
No. 128 of the General Assembly of 1919, *supra,* there was
constructed the improvement of Third Street by hard-
surface pavement, and about one and a half or two miles
of hard-surface pavement of the main line running north-
ward from the north end of Main Street, in North Little
Rock, and the grading of the remainder of the road and
the construction of bridges, and also the paving of Thir-
teenth Street inside the city limits a distance of only a
few blocks, and the grading of a portion of the remainder
of that road to Jacksonville. Assessments of benefits
were levied for the construction of those projects, and
bonds were issued, which are still outstanding. After
the decision holding invalid the statutes of the extra-
ordinary session of 1920, referred to above, the work
was stopped altogether, for the want of funds, and the
statute which is now under consideration was enacted
by the General Assembly of 1923 (Special Acts 1923, p.
380), purporting to amend the original act No. 82 creating
the district, and authorizing the inclusion into the dis-
trict and improvement of another road described in § 5
of the statute, which reads as follows:

"The board of commissioners shall lay out and con-
struct a road running from a point on the highway built
by the North Little Rock & Galloway Highway District,
at or near what is known as Prothro's Gin, where the
present Jacksonville road intersects the said Galloway
Pike, to a point on the Jacksonville lateral road, as may

be selected by the commissioners, and *via* Booker, McAlmont and Jacksonville, to the Lonoke County line, said road to have an eighteen-foot paved surface of asphalt or concrete, as the commissioners may deem best, and, if asphalt type road is used, it shall have a concrete header on either side to prevent spreading, and all quarter sections of land north of the Arkansas River, where any part of same is within five miles of said road as planned, shall be added to and included in the district, if not now included in the district." The caption of the statute is "An act to amend act Number 82 of the Acts of 1919."

The first section of the statute removes the old members of the commission, increases the number to five, and designates the new members by name, prescribes the salary and the method by which vacancies may be filled from time to time. Another section directs the commissioners to make application for State and Federal aid, which had already been allotted and uncollected on the portion of the road to be improved under the prior statutes. Another section authorizes the commissioners to remove the assessors at will and select a successor.

Section 13 of the statute reads as follows:

"The board of commissioners, at the time an assessment of benefits is filed, or at any subsequent time, shall make an order, which shall be filed with the county clerk, which shall have all the force of judgment, provided there shall be assessed upon the real property of the district a tax sufficient to pay the estimated cost of the improvement, with ten per cent. added for unforeseen contingencies, which tax is to be paid by the real property in the district in the proportion to the amount of the assessment of benefits thereon, which is to be paid in annual installments, payable not to exceed four per cent. for any one year, as may be provided in such order. The tax so levied shall be a lien upon all the real property in the district from the time the same is filed with the county clerk, and shall be entitled to preference over all demands, executions, incumbrances or liens whatsoever created, and shall continue until such assessment, with

any penalties and costs that may accrue thereon, shall
have been paid.  The remedy against such assessment
of taxes shall be by appeal, and such appeal must be
taken within twenty days from the time that said assess-
ment has been filed with the county clerk, and, on such
appeal, the presumption shall be in favor of the legality
of the tax.  Any owner of real property in the district
may, by mandamus, compel compliance by the board of
commissioners with the terms of this section.  Provided,
that the levy or levies on the assessment of benefits as
herein provided for shall in no case exceed the total
assessed benefits and interest thereon.''

Section 14 places a restriction upon the percentage
of expenditures for expenses of engineers, attorneys'
fees, and incidental expenses.  Other sections referred
to the laterals mentioned in former statutes relating to
this district..

The board of commissioners authorized under the
statute last referred to proceeded to carry out the terms
of the statute by forming plans for improving the road
from Prothro's Gin, on the Galloway Pike, to the Lonoke
County line.  They appointed an assessor, who proceeded
to make an assessment of benefits, which was reported
to the commissioners and filed with the clerk of the county
court, and, after hearing protests, the taxes were levied
on these assessments of benefits, payable in annual
installments of five per centum of the cost of the improve-
ment, including ten per centum added for unforeseen
contingencies.

The appellants in these two actions are owners of
real property in the district, and they attack the validity
of the statute, also the validity of the assessments, and
the amount of the annual levy, and they also contend that
the proceedings are void because in conflict with the
terms of § 25 of the act of the extraordinary session of
1923 (Acts Extra Session 1923, p. 11), requiring an elec-
tion to be held before proceeding under special statute
to construct an improvement.

The first ground of the attack on the validity of the statute itself is that it authorizes the improvement of a certain road and the assessment of benefits to pay for the improvement, but fails to provide a method for assessing the benefits and in levying and collecting the taxes. This question, as well as most of the other questions in the case, turns on the construction of the statute to determine whether it authorizes a separate improvement, with separate methods of operation, or whether it constitutes an incorporation of the new provisions into the old statute.

It will be observed that § 13 of the statute authorizes the assessment of benefits, but does not provide a complete method for assessing the benefits and enforcing the same. It contains no provision for notice of assessments and a hearing to be afforded to owners of property, and, unless the statute is connected up with the original act creating the district, which contains such provisions, then the statute is void, for the reason that, where the lawmakers delegate to subordinate agencies or other tribunals authority to make assessments, owners of property are entitled to a hearing, otherwise it constitutes the taking of property without due process of law.

Learned counsel for appellants insist that this case is controlled by our decision in *White* v. *Arkansas & Missouri Highway District, supra,* where we held the statutes enacted by the extraordinary session of 1920 to be invalid. While there are some points of similarity between the statutes involved in that decision and the one now under consideration, they are by no means identical, and we have reached the conclusion that the present case does not fall within the controlling force of that decision. The statutes under review in that case created three separate laterals, and prescribed by zones the lands to be included in the district, and two of them excluded other lands which were in the old district, and the only reference to the original statute creating the district was the declaration in each act that the road "shall be built under all the terms and conditions of said act 82 or other acts amending the

same, and in such manner as the commissioners of
the district deem best.   The case was decided by a
divided court, and the majority reached the conclusion
that the statute created new projects, and that the lan-
guage quoted above and used in each statute was not
sufficient to constitute an adoption of the method of pro-
cedure for assessing benefits, etc., prescribed in the orig-
inal statute.   In reaching this conclusion, much force was
given to the fact that the statutes then under considera-
tion constituted legislative findings that lands within the
boundaries of the old district, more than five miles from
these laterals, would not be benefited by the additional
improvements.   In that case there were no grounds on
which to base a decision that the new statutes constituted
a reference to, or adoption of, the provisions of the old
statute, unless the language quoted above was sufficient
for that purpose.   The present case does not depend upon
the interpretation of any such language used in the stat-
ute considered in the White case.   Whatever reasons
there are for a decision either way in the present case,
the decision does not depend on any such language, but
upon other language of the statute.   In the present stat-
ute there is no exclusion of lands as not being benefited
in the district.   On the contrary, the language of § 5,
quoted above, shows plainly that no lands originally in
the district are excluded, and the only change with respect
to the boundaries of the district relates to lands within
five miles of the new road specified not already included
in the district.   In other words, the new statute added
lands to the district, but takes nothing from the district.
This is a very strong circumstance showing that the law-
makers intended merely to add the new project as a part
of the original unit, and not as an independent improve-
ment to be separately paid for out of benefits accruing
from that single improvement.   It is within the power of
the Legislature to determine what shall constitute a unit
of improvement, and such determination will not be disre-
garded by the court, unless it is arbitrary and unreason-
able on its face.   *Johns* v. *Road Improvement Districts,*

142 Ark. 73.   The whole framework of the new statute shows clearly that it was intended merely as an amendment of the old statute by the incorporation of the newly selected road as a part of the unit of improvement.   The title of the act makes it an amendment to the original statute, and the reference to the change in the personnel of the commission, as well as the reference to other matters in the old statute, shows that it is an amendment.

There is only one conflict that we can discover between the new statute and the old, and that is with reference to the levying of the assessments.   Act No. 82, *supra,* provides for the filing of the assessments with the county clerk and the levying of assessments by order of the county court, whereas § 13, *supra,* of the statute now under consideration provides that the commissioners of the district shall levy the assessments.   This must be treated as a repeal of the old statute to that extent, rather than an attempt to provide for a distinct method of levying separate assessments for the construction of this part of the improvement.   The old statute provides for reassessments of benefits and for maintenance, but § 13 manifestly relates to an assessment of benefits to all property in the district as a single unit, and for all purposes involved in the district.   This is what was done under the assessment of benefits, so as to include the cost of the improvement already made, as well as that to be made under the provisions of this statute, and the maintenance of the improvement, all in one assessment.   This statute does not repeal any of the provisions of act No. 82 not in conflict therewith, so the provisions for giving notice of the assessment and affording a hearing to the property owners is conferred by the original statute.

It is next contended that the proceedings under this statute are invalid because there has been no compliance with the requirement of the recent statute of the extraordinary session of 1923 in regard to an election.   Section 25 reads, in part, as follows:

"The commissioners or directors of any road improvement districts created by special acts of the Leg-

islature enacted since the session of the General Assembly in the year 1915, except St. Francis River Road Improvement District of Poinsett County, Arkansas, and St. Francis River and Bridge Road Improvement District, Poinsett County, Arkansas, that have not, at the time of the passage of this act, let any construction contracts, actually done construction work, or issued, sold or delivered to the purchaser thereof any bonds of the district, shall not proceed with the construction of the improvements under their charge, and shall not issue any bonds to secure funds therefor, unless a majority in number and in value of the landowners in fee simple in such district, voting at the election provided for in this act, shall express by their ballots a desire that the construction of such improvements be proceeded with. (Here follow provisions for giving notice and holding the election). This section of this act shall not apply to improvement districts where the act creating the improvement district or amendments to it provides for petitions of any majority of property owners, or an election to ascertain their will, or to those districts where actual construction work has been begun or contracts therefor have been made, or bonds sold and delivered and are outstanding, before the passage of this act.''

This provision of the law refers to improvements, under special statutes, as a whole, and not to a vote on each particular portion of an improvement unit. Viewing the statute in that light, the project added to this district by the statute now under consideration does not violate the terms of the general statute requiring an election as a whole. The present district, as a single unit added to by the act of 1923, supra, had, before the enactment of the general statute referred to above, already let construction contracts, had actually done construction work, and had issued, sold and delivered bonds of the district. It is true that the new sale of bonds, to cover the additional improvement under the present statute, appears from the evidence to have been only tentative, and no new work had been done under this statute.

It is unnecessary for us to determine whether or not the evidence shows the sale of bonds to have been sufficiently complete to exclude the district from the operation of the general statute. ¡We hold that the district is not included in the general statute for the reason, as above stated, that there had already been work done and bonds issued upon the whole unit. It was not the purpose of the general statute referred to above to require an election of property owners every time the lawmakers authorized an addition to the improvement or additional issue of bonds, but the purpose was to withdraw the authority to start improvements on a given unit unless there was held an election by property owners. We are therefore of the opinion that the proceedings of this district are not hampered by the requirement for holding an election.

It is next contended that the annual levy of five per centum of the cost of the improvement is in violation of § 13, *supra,* which limits the assessment to four per centum for any one year. The answer made to this contention by counsel for appellee, which we consider sound, is that the original act No. 82 authorized the inclusion of interest on delayed installments at the rate of six per centum per annum, and the interest will amount to more than the additional one per centum added to the assessments. In other words, five per centum will not amount to more than the principal at four per centum and the interest for the installment of a given year, nor will any of the installments, as a whole, amount to more than the total cost of the improvement, with the ten per centum added for contingencies and the interest on the assessments at six per centum. On the contrary, the levy will be considerably less. This provision in § 13 with reference to the limitation of four per centum on the cost of the improvement, with "ten per cent. added for unforeseen contingencies," is not in conflict with the original statute authorizing the imposition of interest on postponed assessments, and therefore does not repeal the same.

This action was not instituted within twenty days after the assessment was filed with the county clerk, as provided in § 13, *supra,* and it therefore constitutes a collateral and not a direct attack upon the validity of the assessments. Appellants filed their protests, but they failed to bring the suit within the twenty days mentioned in the statute. The assessment is not void on its face, as it appears to be an assessment made upon each individual piece of property, according to its benefits.

There was testimony taken in the case directed to the question of assessment of benefits, and it was shown that all of the cost of the whole improvement, that which had already been made and that which is to be made (not including that part of the improvements which were stricken down by the decision of this court), was taken into consideration for the purposes of assessing the benefits for the payment as well as for the maintenance, and the testimony of the assessor shows that he considered all of the elements entering into the enhancement of values by reason of the construction of the improvement. In other words, it is shown that the assessment was made as a unit for the payment of all the work that was done, and that the real benefits were considered in making the assessment. There was no arbitrary method of assessment adopted, but the actual value of benefits was considered. A summary of the testimony of the assessor, which is not contradicted, is as follows:

"If I remember the figures right, I think there are 60,000 separate assessments, and to say that individual judgment must be passed on each one is impossible. It would have to be machine-made, to a large extent. In addition to this formula set out here, I did give personal attention to every single suggestion made by a taxpayer individualizing his own property, and tried to vary from the rule and make concessions wherever possible, and did make concessions, but, even when that is said and done, the vast bulk of it is on the scale of treating everybody alike."

We do not think the testimony is sufficient, even on a direct attack, to overturn the assessment as a whole, though there is strong testimony to show that the particular assessments of the appellants are excessive. But, as before stated, this is not a direct attack on the assessments, and is collateral, which cannot be made successful unless the assessment is shown on its face to be arbitrary. *Road Improvement Districts* v. *Crary,* 151 Ark. 484.

The conclusion therefore on the whole case is that the attacks upon the statute itself and on the assessment are equally without sufficient grounds.

The decree of the chancery court is affirmed.

HART, J., (dissenting). Judge WOOD and myself think that the majority opinion in this case is contrary to the principles of law decided in the majority opinion in the case of *White* v. *Ark. & Mo. Highway Dist. of Pulaski County,* 147 Ark., p. 160. In that case it was held that the amendatory acts to the act creating the Arkansas & Missouri Highway District in Pulaski County were not sufficiently definite to stand alone. The amendatory acts provided for certain laterals, and the court held them void, because no machinery for making assessments was provided by the amendatory acts.

The territory added by act 198, passed by the Legislature of 1923, is in all essential respects the same as the territory added by act 356, enacted by the Legislature at the extraordinary session in 1920. The language used in the act of 1923 reads as follows: " * * * and all quarter sections of land north of the Arkansas River where any part of same is within five miles of said road as planned shall be added to and included in the district, if not now included in the district." Special Laws of 1923, p. 380.

Section 2 of act 356, approved February 25, 1920, reads as follows: "Section 2. All quarter sections of land in Pulaski County north of the Arkansas River, any part of which is within five miles of the road hereby authorized to be laid out and constructed, that are not already in the Arkansas & Missouri Highway District in

Pulaski County, shall be added to and included in said district.''

Section 7 of act 356 provides that said roads shall be built under all the terms and conditions of act 82, which was the original act, or other acts amending the same.

In the White case it was held that this section did not confer authority upon the commissioners to make the assessment. The court said that the whole improvement was to be built as a unit, and the entire betterment should be assessed as a unit. The CHIEF JUSTICE dissented on the ground that this language expressly conferred the power to build the laterals, and referred to another statute for the method and machinery to be used in making the assessments.

The present act does not even contain a provision authorizing a new assessment to be made under the terms of the original act or any act amendatory thereto. It is well settled that assessments can only be made under power conferred by statute. The board of commissioners act as the agent of the property owners whose interests are affected by the duties it performs. The powers exercised by the board of commissioners to construct the improvement, or as a board of assessors to assess benefits, are derived directly from the Legislature. The Legislature may prescribe the manner in which the commissioners may compel the property owner to contribute to the improvement of the public roads situated in the improvement district, and from which, in the opinion of the Legislature, he derives a benefit; but the powers thus conferred must be strictly followed. The reason is that the power to construct these improvements by the commissioners as the agents of the property owners, and with which the latter must comply, although no party to any of the proceedings, being derived solely from legislative enactment, the courts, instead of enlarging such powers by construction which, even when exercised within proper bounds, must often prove onerous and oppressive to the property owners, should require a strict compli-

ance with the act conferring the powers. This is neces-
sary for the benefit and protection of the landowners.
The assessment, when completed, becomes a lien upon the
lands, and it is of first consequence to the landowners to
be informed of the extent to which this lien is fixed on
their lands.

There is no provision in the present act providing
for any method of assessing benefits against lands, and a
landowner could only surmise that an assessment would
be made under the terms of the original act. New terri-
tory is added to the old district, and provision is made
for the construction of additional roads. Therefore
some provision should be made in the amendatory act for
a new assessment of benefits, if the Legislature thought
a new assessment should be made. We believe that the
Legislature did not make or attempt to make provision
for a new assessment of benefits upon the lands desig-
nated within the boundaries of the district by the amenda-
tory act, and that the court should not supply this defect
or omission by any process of judicial construction. The
power of assessing benefits should only come from direct
legislative action, or the action of such persons or bodies
as may be directly delegated with sufficient authority to
make the assessment.

Once more, we feel called upon to protest against the
zone method of making assessments in cases like this.
When the original act and all the amendatory acts are
read together, it is evident that the rule by which the com-
missioners profess to govern themselves was not that
which they in fact applied; and that the assessments
made by them are not assessments according to benefits,
although attempted to be disguised in that form. The
theory upon which local assessments are sustained is
that the lands assessed are locally and peculiarly bene-
fited over and above the ordinary benefits to the extent
of the assessment. Special assessments can be sus-
tained alone upon the principle that those lands which
enjoy the benefits shall equally, or according to an equi-
table rule of apportionment, bear their just share of the

burden.   No equitable apportionment is attainable under the method of assessment adopted in the present case.

The expert for the commissioners testified: "The benefits as computed are based upon the work already done by the district, and maintaining the same, and on doing the following new work and none other."

Now the East Ninth Street lateral in North Little Rock had already been constructed at great cost, and the act providing for it was expressly held invalid in the White case referred to above.   No provision is made for the maintenance of the new part of the road to be constructed by the amendatory act of 1923.   No provision is made in any of the other acts for maintaining it.   It is admitted that the assessors considered the parts of the road held invalid in the White case in making the assessment of benefits.   No separation of the benefits of construction or of maintenance is made or attempted to be made.   The legal and illegal parts of the roads to be improved are yoked together.   This makes the assessment illegal on its face.

Then too, the district was divided into zones for the purpose of making the assessments.   The cities of Little Rock and North Little Rock and the rural lands within five miles of the improved roads are included in the same district.

The fact that the two cities have separate business and residence districts is disregarded.   No regard is had to any difference of character in the rural lands; and no attention is paid to the fact that they are served by other public roads leading into North Little Rock or Little Rock.   When the density of population of the two cities and the varying and different character of the outlying territory are considered, the frontage rule or zone system of assessment will necessarily result in irregularities and discriminations in making the assessment of benefits, and is therefore arbitrary.   The burden cannot be apportioned with any proximate equality by merely considering the distance of the urban and rural property from the roads to be improved.   In this con-

nection it may not be inappropriate to say that we consider the building of laterals in the two cities, without the consent of a majority in value of the property owners affected, to be violative of art. 19, § 27, of our Constitution.

We are of the opinion that the proceedings under this act are invalid because there has been no election held in compliance with § 25 of the highway act passed at the special session of the Legislature of 1923. We think the object of § 25 of that act was to prevent further proceedings in districts like the present one until the majority of the landowners in number and in value in the district shall vote, at an election held for that purpose, that the construction of such improvements be proceeded with.

Therefore we respectfully dissent.