CHICAGO MILL & LUMBER COMPANY v. DRAINAGE DISTRICT
No. 17.

Opinion delivered February 14, 1927.

1. DRAINS—COST OF IMPROVEMENT—INTEREST.—The Legislature may provide that interest shall not be taken into account in determining whether the cost of a proposed improvement will exceed the betterments.

2. DRAINS—INCREASE OF LEVY RATE.—Under Acts Extra Sess. 1920, No. 305, amending Acts 1917, p. 485, organizing Drainage District No. 17 of Mississippi County, and authorizing the commissioners to levy such rate as is deemed necessary to construct and pay for the improvement, the commissioners had power to increase the percentum of betterments to be collected in any one year.

3. MANDAMUS—COMPELLING COURT TO MAKE LEVY.—Under act No. 305 of Extra Sess. of 1920, amending Acts 1917, p. 485, making the commissioners of the drainage district fiscal agents of such district, it is their duty to ascertain the requirements of the district in the way of taxation, in order to meet the obligations of the district, and to call on the county court to make the necessary levy, and such court may, by mandamus, be compelled to make the levy.

4. DRAINS—EXCESSIVE LEVY.—An anticipated surplus of $3,115 from a tax levy in a drainage district held not excessive, in view of the magnitude of the district and the large requirements to meet its obligations.

5. DRAINS—LEVY BASED ON ESTIMATED DELINQUENCIES.—An estimated requirement based on anticipated delinquencies was not speculative or unreasonable where the estimate was based on actual delinquencies for the previous year.

6. DRAINS—REASONABLENESS OF LEVY.—The levy of a proposed increased rate against a drainage district, based on anticipated delinquencies, held not to result in imposing a greater burden on landowners who pay such rate than on the delinquent lands, since the revenues eventually to be obtained from the delinquent lands will be available for payment of the district's obligations.

Appeal from Mississippi Circuit Court, Chickasawba District; *G. E. Keck*, Judge; affirmed.

*W. R. Satterfield* and *Little, Buck & Lasley*, for appellant.

*Chas. D. Frierson*, for appellee.

SMITH, J.   Drainage District No. 17 of Mississippi County was organized by special statute (Acts 1917, volume 1, page 485), and embraced a large part of both the Chickasawba and Osceola districts of that county. Pursuant to the authority conferred by this act, serial bonds running from the year 1919 to 1942, inclusive, were issued by the district, aggregating $1,682,500.   The betterments to the real property in the district were assessed at $4,190,868.41, and taxes thereon were levied in twenty-four installments for the years 1919 to 1942, inclusive.   The first four installments were fixed at 2.3 per cent. of the assessed betterments, and for the remaining nineteen years the annual installments were fixed at 3.6 per cent. of the benefits.   These annual installments aggregated 81.2 per cent. of the benefits.   The levy of the taxes against the benefits was sufficient to take care of the principal and interest of the bond issue, the interest amounting to $1,394,649.20.

This special act was amended at the extra session of the General Assembly of 1920 by act No. 305, approved February 23, 1920.   The amendatory act enlarged the district and cured all defects in the proceedings leading up to the organization of the district, confirmed all judgments, assessments and contracts, and removed the limitation on the cost of the improvement, and made all betterments bear interest at the rate of six per cent., and provided that interest on the bonds should not be considered as a part of the cost of the improvement, and should be collected in addition to the benefits.

Pursuant to the authority conferred by the amendatory act, plans were prepared to afford drainage to what is known as the Big Lake area, and certain other changes in the plans were made and benefits were reassessed. Bonds dated August 2, 1920, aggregating $2,300,000, were issued in addition to those previously issued.   Taxes were levied on the changed and corrected benefits to take care of the principal and interest on both issues of bonds maturing after that date.

The taxes were then levied in twenty-two annual installments for the years 1921 to 1942, both inclusive. The installments for the years 1921 and 1922 were fixed at 5 per cent.; for the years 1923 and 1924 at 6 per cent.; for the year 1925 at 6.6 per cent.; and for the years 1926 to 1942, both inclusive, at 7½ per cent. The tax rate for 1921 was reduced from 5 to 4 per cent., and for the years 1923 and 1924 it was increased from 6 to 7 per cent.

The district filed a petition in the county court, praying an increase in the rate for the year 1925 to 7.7 per cent., and alleged that it was necessary to increase the tax rate because of a large delinquency of the lands in the district. At the time this petition was filed no default had occurred in the payment of principal or interest on either bond issue.

The appellant, Chicago Mill & Lumber Company, which owns a large body of land in the district, intervened, and was made a party defendant, and filed an answer denying the authority of the court to make an order increasing the tax rate previously fixed. At the hearing in the county court the order prayed was granted, and the intervener duly prosecuted an appeal to the circuit court. Upon the hearing of this appeal the order of the county court was affirmed, and this appeal is from that judgment.

Proof was offered showing that the annual increase in delinquencies had in 1924 reached $71,738.69, the principal part of which was in the Big Lake area. It was shown that a total of 14,000 acres of land had been returned as delinquent, of which 8,000 acres had been sold to the district in proceedings to enforce payment of the drainage tax. The showing was made that the taxes for the year 1924 were on a 7 per cent. basis and produced revenues of $339,724.04, and it was further shown that, if the rate were increased to 7.7 per cent., as prayed, a total revenue of $363,990 would be produced if all taxes were paid, but it was estimated by the commissioners of the district that a delinquency total of 20 per cent. would likely occur. It was also shown that during the year

1925 bonds and interest thereon totaling $310,875 would mature, and, if the anticipated delinquencies occurred, there would be an excess of revenues over requirements of only $3,115.

The court made no finding of fact, for the reason stated that the facts were undisputed, but did make the following declaration of law: ''Under the facts in this case, the drainage district is entitled to increase the tax rate as petitioned for herein. The county court had authority to order said increase under the acts of the General Assembly under which said district was created, and the order of the county court is affirmed.''

The appellant lumber company requested the following declarations of law, all of which were refused, to which ruling of the court exceptions were duly saved:

''No. 1. The drainage district has not shown that the original levy of taxes is insufficient to meet the costs of the improvement, and, until it does do so, the county court has no authority to increase the tax rate.

''No. 2. Under the law creating the district, each tract of land must bear its just proportion of the costs of making the improvements in said district; that the order of the county court made herein in which this appeal is taken is based upon an anticipated insufficiency of the revenue arising from the levying of taxes to meet the maturity of principal and interest of bonds, and that, if said order stood, it would result in the lands which have been paid upon each year bearing a greater burden than other lands in the district permitted to go delinquent.

''No. 3. Drainage district has not shown, under the proof herein, that it was entitled to the relief prayed for, and that the county court was without authority to make an order increasing the tax rate.''

We think the declarations of law requested by counsel for appellant are all answered adversely to its contention in the cases of *Oliver* v. *Whitaker,* 122 Ark. 291, 183 S. W. 201; *Pfeiffer* v. *Bertig,* 141 Ark. 531, 217 S. W. 791; *Skillern* v. *White River Levee District,* 139 Ark. 4, 212 S. W. 90; *Massey* v. *Ark. & Mo. Highway District,*

163 Ark. 63, 259 S. W. 387; *Griffin* v. *Little Red River Levee District,* 157 Ark. 590, 249 S. W. 16; and *Faulkner Lake Drainage District* v. *Williams,* 169 Ark. 592, 276 S. W. 604.

The effect of these cases, as applied to the facts of the instant case, is that the Legislature may provide that interest shall not be taken into account in determining whether the cost of a proposed improvement will exceed the betterments, and if it be true, as contended by counsel for appellant, that the original act did not so provide, the amendatory act very clearly did, and, as has been frequently decided, this is a matter wholly within the control of the General Assembly.

Upon the question of the power of the board of commissioners to increase the rate per centum of the betterments to be collected in any one year, it may be said that both acts confer power and impose the duty upon the commissioners to levy such rate as is deemed necessary to construct the improvement and pay for it, the only limitation in this respect being that not more than ten per cent. of the betterments shall be collected in any one year if any landowner objects thereto.

Under the act creating appellee district, as under the act construed in the case of *North Arkansas Highway Improvement District No. 2* v. *Rowland,* 170 Ark. 1168, 282 S. W. 990, the commissioners are made the fiscal agents of the district. It is their duty to ascertain what the requirements of the district in the way of taxation are to meet the obligations of the district, and to call upon the county court to make the necessary levy, and the court might, by mandamus, have been compelled to make the levy. The case last cited so expressly decided.

It was said in that case that:

"We do not mean to hold that, if it were shown in a proper proceeding that the commissioners of the district were levying taxes unnecessarily, the taxpayers would be without remedy to prevent this from being done."

But we think no abuse of discretion was shown here. It was a proper matter for the exercise of the discretion

vested in the commissioners to ascertain and declare the probable requirements of the district to meet its obligations as they matured. In view of the magnitude of this district and the large requirements to meet its obligations, the anticipated surplus of $3,115 cannot be regarded as excessive or unnecessary. It is true this estimated requirement is based upon anticipated delinquencies, but that estimate is based upon the actual delinquency for the previous year, and cannot therefore be said to be either speculative or unreasonable.

We conclude therefore that the court below was wholly warranted in refusing appellant's declaration of law that the district had not shown that the original levy of taxes was insufficient to meet the cost of the improvement.

The contention of appellant, expressed in its second request, that the levy of the proposed rate would result in requiring it and other landowners who had paid and who continued to pay their taxes to bear a greater proportionate burden than that imposed upon the lands which were allowed to go delinquent, is answered in the Rowland case, *supra,* and in that of *Arkansas-Louisiana Highway Imp. Dist.* v. *Pickens,* 169 Ark. 603, 276 S. W. 355. It was pointed out in those cases that the lien of the district continued until the taxes were paid or until the lands themselves were acquired by the district through sales for the nonpayment of the taxes, and that, when the delinquent taxes were paid, they became available and should be used in paying the obligations of the district, and further, that, if the lands were sold to the district and not redeemed, then the entire value of the lands to be realized by a sale thereof would be available for this purpose. So that, while a delay would be entailed in obtaining and applying revenues from the delinquent lands, these revenues would finally be obtained and applied, and thus no unequal burden would be imposed. Upon this feature of the question the case of *Turley* v. *St. Francis Rd. Imp. Dist. No. 4,* 171 Ark. 939, may be cited.

We think it sufficiently appears, from what has been said, that the district was entitled to the relief prayed, and that the county court had the authority to make the order increasing the tax rate, and the judgment of the circuit court to that effect is accordingly affirmed.

REHEARING OPINION.

SMITH, J. In the brief filed by counsel for appellant in support of its petition for rehearing certain questions are discussed which we think are concluded by the original opinion in the case.

It is insisted that we did not discuss the question of the priority of the first bond issue over the second issue of bonds, and that a condition may arise through delinquency of payment of taxes when this question will be of paramount importance.

We purposely refrained from discussing this question, as we do not think it properly arises on this appeal. The bondholders are not before the court, and appellant is being required to pay only a per cent. of the betterments against its lands which is authorized by law. The limitation of taxation to the amount of its betterments is its protection, as this cannot be exceeded in any event. The principle of uniformity is fully preserved, as is shown in the original opinion.

The petition for rehearing is therefore overruled.