BURTON *v.* CHICAGO MILL & LUMBER COMPANY.

Opinion delivered January 20, 1913.

1.  DRAINAGE DISTRICT—FINDINGS BY COURT.—Act No. 279 of the Acts of 1909, as amended by public act No. 221 of the public Acts of 1911, provides that in the establishment of a drainage district, after the filing of the petition, and the appointment of an engineer, and after he has made the survey and filed his report, "the county court shall meet and hear all property owners within the proposed district, who * * * advocate or resist the establishment of the district, and if it deems it to the best interest of the owners of real property within said district, that the same shall become a drainage district, * * * it shall make an order upon its records establishing the same as a drainage district, * * *" and when the

county court found (1) that it would be to the best interest of the land owners that the land within the proposed district be drained; (2) that the establishment of the district would be to the advantage of the real property owners therein; (3) that the petition for the establishment of the district does not contain a majority in numbers, acreage or value of the owners of real property in the said district; (4) that the petition for the district did not contain a substantial number of real property owners in said district; and that the remonstrance against same contains an overwhelming majority in numbers, acreage and value of the said owners, and the county court denied the petition for the establishment of the said district. *Held,* that the power lodged with the county court, under the statute being very great, there should be no uncertainty about the advantage to the land owners, before the court should order the establishment of the district, and any uncertainty must be resolved in favor of the land owners upon whom the burden of the improvement rests, and as the court's finding showed uncertainty, the county court will not be ordered to establish the district under the statute.   (Page 304.)

2.   COSTS ACCRUED IN ESTABLISHMENT OF DRAINAGE DISTRICT.—Accrued costs of a drainage district which had not been established can be adjudged only according to the terms of the statute and of the bond filed by the petitioners, and where both provide only for the payment of the cost of the survey, no other costs can be recovered from petitioners or their bondsmen.   (Page 305.)

Appeal from Mississippi Circuit Court, Chickasawba District; *W. J. Driver,* Judge; modified and affirmed.

*J. T. Coston,* for appellants.

1.   The statute is mandatory.   The finding of fact by the court is in the language of the statute, and when, having heard the evidence and found that the organization of the proposed district "will be to the advantage of the owners of real property therein," he could not ignore "the best interest of the owners of real property" therein and dismiss the petition.   Castle's Sup., §§ 1450-A and 1450-B.   The statute is too plain and unambiguous to leave any room for doubt as to the meaning of the Legislature.   Moreover, individual rights and the public interest call for the exercise of the power vested by the act in the court.   26 Ark. 285; 4 Wallace, 446; 81 N. W. 506; 85 N. E. 401, 402; 55 Pac. 841; 5 N. E. 115. See also 9 Port. 390; 9 Ill. 20; 7 Ind. 122; 18 Ind. 27; 39

N. H. 435; 1 Peters, 46; 9 Am. Dec. 274; 5 Wall. 705; 70 Ill. 587; 77 Ill. 271; 61 Me. 566; 8 Am. Rep. 87; 73 Mo. 443; 4 Neb. 150; 22 Barb. 404; 56 Barb. 452; 3 Lans. 160; 66 Ark. 304.

2. The ownership of the lands embraced in the district is not proved. The act is silent as to what is *prima·facie* evidence of ownership where it comes to passing upon a remonstrance against the formation of the district. Surely the mere signing of a remonstrance alleging ownership is not sufficient, yet, with the exception of about 10,000 acres proved by parol, this is all that tends to show ownership. 68 Ark. 430.

The fourth find by the court is wholly unsupported by the evidence.

3. The court erred in taxing the cost of the proceeding against the petitioners. Castle's Sup., § 1450-D.

*Allen Hughes,* for appellees.

1. There is no finding of fact. The findings of the court are but expressions of opinion under the words of the act, which recognizes the fact that the question as to what will be to the best advantage of the people of the district must be matter of opinion. Acts 1911, pp. 193, 195.

The effect of the changes made by the act of 1911 does not turn upon the meaning of the words "may" and "shall." Compare Acts 1909, p. 833, with Acts 1911, p. 193, §§ 1 and 2.

It was never the intention of the Legislature to confer upon the county or circuit judge autocratic powers in these matters, nor to compel the judges to impose their personal views in relation thereto upon the people within their jurisdiction.

2. Ownership was alleged in the protests and not denied. At the trial it was conceded in all cases except where challenged.

3. If the petitioners and their sureties are not liable for the costs of this proceeding, then the requirement

of a bond in the act and the giving of a bond is a vain and useless thing.

SMITH, J.   On the 15th day of May, 1911, a petition of land owners who were proceeding under Act 279 of the General Assembly of the State of Arkansas for the year 1909, as amended by Act No. 221, of the Public Acts of 1911, was presented to the circuit court of the Chickasawba District, Mississippi County, Arkansas, for the organization of a drainage district, including a large part of Mississippi County and a considerable part of Craighead and Poinsett counties.   The order for the preliminary survey was made, and an engineer appointed, who later reported "that the construction of said proposed drainage system will drain, reclaim, improve and benefit the territory within the boundaries described in his report, which contained 434,000 acres.   Under the report, ninety-one ditches, with a total length of five hundred and seventy-two miles, were provided for.   The original petition was signed by six petitioners, three of whom withdrew their signatures, but under date of January 1, 1912, twenty-seven other land owners signed the petition.   Numerous protests against the creation of the district were filed with the court, but some of these protestants filed a further petition asking that their names be stricken from the protests.

The record is a very voluminous one, and many witnesses testified, and the inquiry assumed the widest scope, as was no doubt proper, considering the nature of this proceeding, and the power and duty of the trial judge upon such hearing.   At the conclusion of the evidence, the petitioners asked the court to make a finding of fact on the following questions:

(1)   Would it be to the best interest of the owners of real property within the proposed district that the same become a drainage district?

(2)   Is it the opinion of the court that the establishment of the proposed drainage district will be to the advantage of the owners of real property therein?

The court made the following finding of fact:

"(1) That it would be to the best interest of the owners of real property within the proposed district that the land therein be drained. (2) That it is the opinion of the court that the establishment of the proposed drainage district would be to the advantage of the owners of real property situated in said district. (3) The court finds that the petition filed herein does not contain a majority in numbers, acreage or value of the owners of real property in said proposed district. (4) The court finds that the petition for the proposed district does not comprise a substantial number of the owners of real estate located in said district; and further finds that the remonstrance appearing herein constitutes an overwhelming majority in number, acreage and value of the owners of property in the said proposed district.

"Wherefore, the petition praying for the establishment of the proposed drainage district is denied."

It will be observed that, in the first declaration, the court was asked to declare whether it would be to the best interests of the owners of real property within the proposed district that the same become a drainage district, which necessarily meant a single district, such as the one here proposed, but the court did not make that finding, but simply found that it would be to the best interest of the owners of real property within the proposed district that the land be drained. The significance of the difference between the declaration of fact asked and the one made by the court is apparent when considered in connection with the evidence and the record in this case. Conflicting views were expressed as to whether Poinsett and Craighead counties should unite with Mississippi County in the formation of this district, and the opposition of the land owners in the first two named counties appears to have been almost unanimous. Counsel attempt to explain this opposition by saying that Mississippi County must have the drainage, and, when the project is an accomplished fact, Craighead and Poinsett counties will derive the same benefit as they would, if they shared the burden of its construction, but

would if they shared the burden of its construction, but that they selfishly seek to avoid the assumption of their share of the costs, under the belief that Mississippi County will eventually construct the improvement, even though it is finally done entirely at its own expense. We need not discuss the merits of this question; it is sufficient to say that the court refused to find it to be to the best interests of the land owners that the proposed district became a drainage district, and found merely that it would be to the best interest of the owners of the land that the lands be drained. We think that the distinction is manifest. The court did find that the establishment of the proposed district would be to the advantage of the owners of real property in said district, but the court evidently did not intend by this finding to annul its first finding. There may be advantages, as there are disadvantages. The court had before it much evidence to support a finding, that advantages would be derived by the construction of the proposed improvement; upon the other hand, there was much evidence from which the court might have found that while advantages would flow from the construction of the improvement, it was still not for the best interests of the land owners that it be constructed at that time. For instance, there was evidence before the court that a very disastrous overflow had resulted from breaks in the levee system, which protected the lands of the district from the annual inundation of the Mississippi River, and this break had occurred only a short time before the hearing of the case; and witnesses testified that the country had not sufficiently recovered from its effects to undertake the cost of this improvement; and there was evidence from which the court might have found that a drainage project must follow and not precede levee protection; that it was not to the best interests of the land owners to assume at the present time the additional burden of this improvement, although the improvement itself, when constructed, would be advantageous to the proposed district. However, the court did not undertake

in its finding of facts to make specific declarations upon all of the questions, which were evidently considered, and upon which evidence was offered. At best, it can only be said in favor of appellant's contention that the findings are conflicting, and this is not a case where we should apply the rule, that when the specific finding of fact is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly. Where this rule applies, at all, it is applicable alike to the finding of fact made by the trial judge, as well as to a verdict by a jury. *Gebhart* v. *Merchant,* 84 Ark. 359. It must be borne in mind that the court specifically found the facts to be, that the petition for the proposed improvement did not comprise a substantial number of the owners of real estate located in the district, and found that the remonstrance consisted of an overwhelming majority in number, acreage and value of the owners of the real property in said proposed district.

It must be confessed, that to some extent, at any rate, the court's findings are conflicting, but we can not accept that construction of these apparently conflicting findings, which would overturn the judgment rendered upon them. Upon a consideration of the whole case the court dismissed the petition and declined to establish the district.

Under this Act No. 279, *supra,* it was provided that, when three or more owners of real estate, within a proposed district, should petition for the establishment of a drainage district, that it was the duty of the court to enter upon its records an order appointing an engineer to make a survey and ascertain the limits of the region which would be benefited by the proposed system of drainage; and the engineer was required to file a report showing whether the territory embraced would be benefited by the proposed system of drainage, and the court thereupon was required to enter an order laying off the district so surveyed, as a drainage district and to give notice of that fact. Section 2 of that act provided that this order of the court should be void, unless within one

year thereafter there was filed with the clerk of the court a petition, signed by a majority, either in number, or in acreage, or in value, of the holders of real estate within the district praying that the improvement be made. Under the provisions of this act, the proceedings were at an end unless within twelve months of the date of the court's preliminary order a petition as above stated was filed. Both sections 1 and 2 of the Act of 1909 were amended by public act No. 221 of the Acts of 1911, page 193. The first section of the Act of 1911 provides for the same steps as the Act of 1909 up to the time of final action on the question of creating the district. As to that question the Act of 1911 contains this additional provision: "At the time named in said notices, said county court shall meet and hear all property owners within the proposed district, who wish to appear, and advocate or resist the establishment of the district, and if it deems it to the best interest of the owners of real property, within said district, that the same shall become a drainage district, under the terms of this act, it shall make an order upon its records establishing the same as a drainage district, subject to all the terms and provisions of this act."

The second section of the Act of 1909 is devoted chiefly to the same matter as in the same section in the Act of 1911, and is amended so as to read as follows: ' 'If upon the hearing, provided for in the foregoing section, the petition is presented to the county court signed by a majority, either in numbers, or in acreage, or in value, of the holders of real property within the proposed district, praying that the improvement be made, it shall be the duty of the county court to make the order establishing the district without further inquiry; but if no such petition is filed it shall be the duty of the county court to investigate, as provided in the preceding section, and to establish said district, if it is of the opinion that the establishment thereof will be to the advantage of the owners of real property therein.''

Thus it is seen that the effect of the amendments is

to authorize the establishment of the proposed improvement, even though the same be not petitioned for by a majority of the land owners in number, acreage or value; provided the court determines that the establishment thereof will be to the advantage of the owners of the real property therein. This is certainly a very great power vested in the court, and when exercised in the face of the failure of petitioners to secure the signatures of a majority either in number, or acreage, or value, there should be no uncertainty about it being to the advantage of the land owners; and under such circumstances any uncertainty should be resolved in favor of the owners of the property to be assessed, upon whose shoulders the burden of the improvement will rest. And in view of the uncertainty that here exists, we must decline to reverse the action of the court below and order the establishment of the district.

Appellant complains that the court ordered and adjudged all the accrued costs in this proceeding to be taxed against the petitioners and their bondsmen. This was error in so far as the judgment assessed any costs against the bondsmen, except the costs of the survey. The condition of the bond in this case is as follows: "We, the undersigned, principals and sureties, promise to pay the expense of a survey of the proposed drainage district, described in the foregoing petition, in case the drainage district is not formed, but in case the said district is formed, then this obligation is null and void." This bond is conditioned as required by law, and covers only the cost of the survey. But the question arises whether the costs other than that of the survey should be assessed against the petitioners or against the counties. Section 4 of the Acts both of 1909 and 1911 contains this provision: "If for any cause the improvement shall not be made, the said costs shall be charged on the real property in the district, including railroads and tramroads, and shall be raised and paid by assessment in the manner hereinafter prescribed." But there is no manner therein prescribed for the payment of these costs, where the district is not

established. Where the district is established, these costs become a part of the general costs of the improvement and are collected as such, but in this case the district was not established, and there is no way in which the costs can be prorated against the taxable property of the district, because there can never be any question of benefit or betterments against which the cost can be assessed. Section 1 of the Act of 1911 provides: "All expenses incident to the survey and the cost of publication shall be paid by the county, as the work progresses, upon proper showing, but all expenses incurred by the county shall be repaid out of the proceeds of the first assessment levied under this act." But there can be no assessment unless the district is established. It appears, therefore, that the sureties, upon the bond above mentioned, are liable only as provided by the statute and the terms of the bond itself for the cost of the survey, but for this cost only. It may be that the county is liable for the costs of publication, as the bond which petitioners are required to give embraces only the cost of the survey and does not include the cost of publication. The section just quoted from requires the county to pay the expenses of the survey and publication, as the work progresses. But the county is not a party to this proceeding and we will not attempt to determine its liability for the cost of publication. As to the remainder of the cost, no order can be made because the district was not established. In the case of *Wilson* v. *Fussell,* 60 Ark. 196, it was said: "The right to recover costs did not exist at common law. It rests upon the statute only, and it is to the statute we must look for the authority to recover costs in any given case." And there appears to be no authority for the recovery of costs in this case, except as above stated.

Accordingly, the judgment of the court below is affirmed, except as to the costs, as to which it will be so modified as to charge the petitioners and the sureties upon their bond, for the costs of the survey only.