## JONES v. FLETCHER.

## Opinion delivered January 14, 1918.

1. DRAINAGE DISTRICTS—ORGANIZATION—SECOND PETITION—EXCLUSION OF CERTAIN LAND.—Under the act of 1909, page 829, as amended by the act of 1911, page 193, the organization of a drainage district is not rendered invalid because a second petition was not filed, nor because in making the final order establishing the district the court excluded three sections of land embraced in the original petition.

2. DRAINAGE DISTRICTS—ORGANIZATION—FINDINGS OF COUNTY JUDGE—PHRASEOLOGY.—In the organization of a drainage district the court found that "it will be of great benefit to the land and other real property to have the said region drained; and that it will be of great benefit to the health of the inhabitants of said region; and that said work can be done at a reasonable cost, and will not exceed the benefits derived." *Held*, while this finding was not in the language of the statute, that it was tantamount to saying "the establishment of the district will be to the advantage of the owners of real property therein," and that the organization of the district was valid.

3. DRAINAGE DISTRICTS—ORGANIZATION—COLLATERAL ATTACK.—In a collateral attack upon the judgment of the county court establishing a drainage district, the plaintiff can not attack the district upon the ground that the proposed improvement was impracticable.

4. IMPROVEMENT DISTRICTS—COST—INTEREST ON BONDS.—The interest on the district's bonds is to be excluded from the original cost of the improvement.

5. IMPROVEMENT DISTRICTS—INTEREST.—In determining whether or not the cost of an improvement will exceed the assessed value of

benefits, it is proper to consider interest on the assessments. The right to collect interest is not lost by a failure to compute the interest in advance and add it, proportionately, to the installments of assessments.

Appeal from Lonoke Chancery Court; *J. E. Martineau*, Chancellor; affirmed.

*Wallace Townsend*, for appellants.

1. The proceedings under which the district was organized were void. The statute was not followed. Only one petition was filed and the court did not find that it was for the "best interest of the owners," etc. 106 Ark. 296, 300-1-4; 116 *Id*. 35.

2. No second petition was filed and three sections of land were omitted in the final order. 118 Ark. 119; 109 *Id*. 60.

3. The cost of improvement exceeds the benefits. 125 Ark. 422.

4. Certain lands were excluded although benefited. 125 Ark. 388; 121 *Id*. 13; 108 Ark. 141; 104 *Id*. 298; 122 *Id*. 491; 120 *Id*. 230. See also 64 Ark. 108-110; 123 *Id*. 205; 125 *Id*. 518-523; 192 S. W. 71; 120 Ark. 230.

*Geo. M. Chapline* and *W. P. Beard*, for appellees.

1. The petition and all proceedings necessary complied with the statute. No second petition was necessary. 93 Ark. 332.

2. The cost did not exceed the benefits. 122 Ark. 291.

3. There was no material variance from the improvement prayed. 120 Ark. 233. The court had jurisdiction and there was no appeal; the order was final and cannot be attacked collaterally. 121 Ark. 13; 50 Ill. App. 60; 5 Ark. 424; 8 *Id*. 268; 20 *Id*. 256; 14 *Id*. 125; 24 *Id*. 30; 44 *Id*. 56; 50 *Id*. 188; 118 *Id*. 449; 119 *Id*. 20. All irregularities were waived by failure to appeal.

The notice of the hearing on the assessment of benefits was sufficient. 103 Ark. 452.

McCULLOCH, C. J.   This is an action instituted by appellant in the chancery court of Lonoke County against appellees as commissioners of Bayou Meto Drainage District No. 1, of Lonoke County, in which an attack is made on the validity of the organization of said drainage district and the assessments levied on the real property in the district to defray the cost of constructing the improvement.   The cause was heard by the chancellor upon the pleadings and proof and a decree was entered dismissing the complaint for want of equity.

(1)   The validity of the proceedings is attacked on numerous grounds.   The two principal grounds for attack are that the order of the county court establishing the district was void because there was not filed a second petition as provided for in the statute, and because the court, in making the final order establishing the district, excluded three sections of land embraced in the original petition.   These two attacks are so related that they may be discussed and disposed of together.

The statute provides that when ''three or more owners of real property within a proposed district shall petition the county court to establish a drainage district to embrace their property, describing generally the region which it is intended shall be embraced within the district,'' and shall file a bond to pay the expense of survey, it shall be the duty of the county court to enter an order appointing an engineer who ''shall forthwith proceed to make a survey and ascertain the limits of the region which would be benefited by the proposed system of drainage;'' and after such engineer has filed his report, a notice shall be given by publication in a newspaper of the hearing by the court, and that at the time named ''said county court shall meet and hear all property owners within the proposed district who wish to appear and advocate or resist the establishment of the district, and if it deems it to the best interest of the owners of real property within said district that the same shall become a drainage district, under the terms of this act, it shall make an order upon its records establishing

the same as a drainage district subject to all the terms and provisions of this act." Act of 1909, p. 829, as amended by act of April 28, 1911, p. 193.

Section 2 of the act of 1911, referred to above, reads in part as follows:

"If upon the hearing provided for in the foregoing section the petition is presented to the county court signed by a majority, either in numbers or in acreage or in value of the holders of real property within the proposed district, praying that the improvement be made, it shall be the duty of the county court to make the order establishing the district without further inquiry; but if no such petition is filed it shall be the duty of the county court to investigate as provided in the preceding section and to establish said district if it is of the opinion that the establishment thereof will be to the advantage of the owners of real property therein."

The method of procedure provided for in the statute is that after the report of the engineer has been filed and notice of the hearing given, a majority of the owners of property to be affected by the organization of the district may petition for the improvement, and it is made the duty of the county court to establish the district without further investigation when petitioned for by a majority "in numbers or in acreage or in value of the holders of real property within the proposed district;" but if there be no second petition, then the court is empowered to make the order establishing the district upon consideration of the original petition, when the court upon investigation finds "that the establishment thereof will be to the advantage of the owners of real property" in the district. It is not essential, therefore, that there be a second petition. *Burton* v. *Chicago Mill & Lumber Co.,* 106 Ark. 296. Nor does the statute confine the power of the court in establishing the district to the boundaries stated in the original petition. The statute, it will be observed, only requires that the original petition shall describe "generally the region which it is intended shall be embraced within the district," and further provides that the engi-

neer appointed by the court shall "make a survey and ascertain the limits of the region which would be benefited by the proposed system of drainage." Section 7 of the act of 1909 expressly provides for the addition of other lands to the district subsequently found by the board of commissioners to be benefited by the proposed improvement. It is clear, therefore, from the language of the statute that the final boundaries of the district are to be determined by the court and not confined to the area described in the original petition, as the survey which is made subsequent to the filing of the original petition necessarily serves as a guide to the court in determining what property will be affected by the improvement. We are of the opinion, therefore, that neither of the two grounds stated for the attacks upon the proceedings are tenable.

(2) It is insisted, however, that the findings of the county court, as recited in the order establishing the district, do not sufficiently comply with the statute to justify the creation of the district, in that the court did not find, as provided in the statute, that the esablishment of the district "will be to the advantage of the owners of real property therein," but merely found that the organization of the district "will be of great benefit to the lands and other real property to have said region drained." Counsel rely on the decision in *Burton* v. *Chicago Mill & Lumber Co. supra,* as sustaining the contention of appellants, but we do not think that the questions involved in the two cases are similar. In the case just cited we had for consideration the question whether or not the order of the court refusing to establish the district was inconsistent with the findings that "it would be to the best interest of the owners of real property within the proposed district that the land therein be drained." We held that the order was not inconsistent with the findings and affirmed the judgment of the circuit court. In the present case, however, we have the question whether the order is void for the reason that the finding of the court is not in the language of the statute. We think that the re-

citals of the finding tends to support the judgment of the court in creating the district. The finding was not, it is true, recited in the precise language of the statute, but it is substantially so. The court found according to the recital that "it will be of great benefit to the land and other real property to have said region drained; and that it will be of great benefit to the health of the inhabitants of said region; and that said work can be done at a reasonable cost, and will not exceed the benefits derived." That is tantamount to saying that "the establishment of the district will be to the advantage of the owners of real property therein," and supports, rather than defeats, the judgment of the court creating the district.

(3) It is next contended that the scheme for the proposed improvement is impracticable, and that for that reason the district ought not to have been established. But the answer to that contention is that the present action constitutes a collateral attack upon the judgment of the county court establishing the district, and that judgment is not open to such an attack, the presumption being that the county court acted upon evidence sufficient to warrant the finding that the establishment of the district and the construction of the improvement thereunder would result "to the advantage of the owners of real property" within the meaning of the statute. *Jacks Bayou Drainage Dist.* v. *St. L., I. M. & S. Ry. Co.,* 116 Ark. 30.

(4) It is also alleged that the cost of the improvement will exceed the benefits, but this contention is based upon the inclusion of interest on the bonds as a part of the cost of the improvement, and this court has already decided that under the statute the land owners are required to pay the interest on deferred payments of assessments to meet the interest on the bonds issued to pay for the improvement, which results in substance in excluding the interest on the bonds from the original cost of the improvement. *Oliver* v. *Whittaker,* 122 Ark. 291.

(5) It is urged that interest on assessments can not be considered for the reason that the order of the county court approving the assessments does not show that interest was computed and added, proportionately, to the assessments.

We held in *Oliver* v. *Whittaker, supra,* that the statute authorized the computation of interest in advance and its inclusion in the assessments but we did not say that it must be done in that way. Such a view would, we think, disregard the plain language of the statute which provides that "deferred instalments of the assessed benefits shall bear interest at 6 per cent. per annum," and that "interest need not be calculated until it is necessary to do so to avoid exceeding the total amount of benefits and interest."

The framers of the statute evidently had in mind possible cases where it would be uncertain, at the time of the assessment of benefits, whether or not the cost of the improvement and the interest on bonds would exceed the value of benefits exclusive of interest and they meant to confer authority to leave the computation and collection of interest open until it became necessary to collect interest in order to "avoid exceeding the total amount of benefits and interest."

Land owners have the right to pay off the face of the assessments, without interest, within 30 days after the assessments become final but if the option to do so is not exercised, then the statute itself imposes interest to be computed when necessary "to avoid exceeding the total amount of benefits and interest." The right to collect interest has not, however, been lost by failure to compute the interest in advance and add it, proportionately to the instalments of assessments, therefore it is proper to consider interest on assessments in determining whether or not the cost of the improvement will exceed the assessed value of benefits.

Our conclusion upon the whole case is that the several attacks made upon the validity of the district are unfounded, and that the chancellor was correct in dismissing the complaint.   Affirmed.