GREER, TRUSTEE *v.* BLOCKER, RECEIVER.

4-9336            236 S. W. 2d 68

Opinion delivered January 22, 1951.

*A. F. Triplett* and *A. F. House,* for appellant.

*Quinn & Williams, Atchley & Vance,* and *Shaver, Stewart & Jones,* for appellee.

ED. F. McFADDIN, Justice. This litigation is an effort by bondholders of a drainage district to collect unpaid bonds and interest. McKinney Bayou Drainage District of Miller County, containing approximately 31,893 acres, was organized by order of the County Court on May 4, 1923, under the provisions of the General Drainage Law, as now found in § 21-501, *et seq.,* Ark. Stats. The assessment of benefits, totaling $1,045,246[1] was confirmed by order of the County Court on August 21, 1923.

The cost of the improvement, as reflected by the records of the District, was $450,000. To pay such cost the Commissioners of the District, at a meeting on January 14, 1924, adopted a resolution[2] for the issuance of bonds

[1] In a proceeding not here questioned, the benefits were reduced on a few tracts prior to the issuance of the bonds, so that the ultimate total of assessed benefits probably became $1,028,425. With this explanation, we find it more convenient to refer to the benefits as "$1,045,246.00" since such figure appears throughout the briefs.

[2] The resolution of the Commissioners reads in part:

"On motion duly seconded and unanimously carried, it was resolved that in order to pay for the proposed drainage improvement in said District it will be necessary to issue bonds in the sum of $450,000

totaling $450,000, to be dated January 1, 1924, and bear interest at 5½ per cent per annum, with interest payable semi-annually, and the first bond to be due August 1, 1928, and the others serially annually thereafter. Accordingly, on January 14, 1924, the County Court of Miller County duly entered an order levying and assessing a tax of $943,274.75 on the benefits, to pay the bond issue and interest thereon, the Court order reading in part:

"It is further considered, ordered and adjudged that the said tax hereinbefore assessed shall be divided into installments, and that the said installments shall be due and payable as follows: For the year 1924 Five and Forty-Three Hundredths (5.43%) per centum of the assessed benefits, producing for the said year 1924 the sum of Fifty-Six Thousand Seven Hundred Fifty-Six and 85/100 Dollars ($56,756.85); for each of the years 1925 and 1926 Two and Six-Tenths (2.6%) per centum of the assessed benefits, producing for each of said years 1925 and 1926 the sum of Twenty-Seven Thousand, One Hundred Seventy-Six and 39/100 Dollars ($27,176.39); and for each of the years 1927 to 1948, inclusive, Three and Seventy-Six Hundredths (3.76%) per centum of the assessed

which, with ten per centum added for unforeseen contingencies, amounts to $495,000; that the County Court of Miller County, Arkansas, be called upon to enter upon its records an order providing that there shall be assessed upon the real property, including the lands, railroads and tramroads within said District and declared to be benefitted by said improvements, a tax amounting to the sum of $943,274.75, being the amount of the principal and interest on said bonds plus ten per centum for contingencies, the interest on said bonds being at the rate of five and one-half per centum per annum, payable semi-annually.

"That the total cost of said improvement is greater than should be levied and collected in a single year, and that said tax, when assessed, be divided, as is required by law, into annual installments, and that there be collected for the following years installments of said tax sufficient to produce the following amounts:

"For the year 1924, five and forty-three hundredths (5.43%) per centum of the assessed benefits, producing for said year 1924 the sum of $56,756.85; and

"For each of the years 1925 and 1926 two and six-tenths (2.6%) per centum of the assessed benefits, producing for each of said years 1925 and 1926 the sum of $27,176.39;

"For each of the years 1927 to 1948 inclusive three and seventy-six hundredths (3.76%) per centum of the assessed benefits, producing $39,301.25 for each of said years 1927 to 1948 inclusive.

"Said collections to be credited first upon the interest accruing upon said levy of the assessment of benefits."

benefits producing for each of said years the sum of Thirty-Nine Thousand, Three Hundred One and 25/100 Dollars ($39,301.25); which collections shall be credited first upon the interest accruing upon the said levy.''

It will be observed that this Court order levied a tax of $943,274.75 which was 93.35 per cent of the total assessed benefits of $1,045,246. If every property holder had paid the annual installment when due, $943,274.75 would have been collected by 1948; and such amount, as calculated in 1924, would have been sufficient:

(a)   To pay the 5½ per cent interest promptly when due on each outstanding bond;

(b)   To pay the $450,000 bonds promptly as due; and

(c)   To provide 10 per cent of the total of said bonds and interest for unforeseen contingencies. The bonds and interest were secured by pledge or mortgage to the Trustee of ''.   .   .   all uncollected assessments levied by the County Court upon the real property, public roads, railroads and tramroads in said District, together with all assessments that may hereafter be levied thereon, . . .''

On August 6, 1928, (five days after the maturity of Bond No. 1 of the District) the Commissioners of the McKinney Bayou Drainage District filed a petition in the Miller Chancery Court, praying that a Receiver be appointed for the District in order to prevent a multiplicity of suits by the bondholders. The petition alleged, *inter alia,* that the District should have collected by August 1, 1928, a total of $150,410.88, but in fact had collected only $119,748.43; that due to delinquencies in collection the District was unable to meet its maturing bonds, and interest. C. M. Blocker was appointed Receiver of the District on August 7, 1928, and took charge of the drainage system and all assets of the District, and has continued as such Receiver up to this date.

During the entire course of the receivership annual reports have been rendered, listing all items of receipts and disbursements, and the total of outstanding and unpaid bonds and interest. As to the correctness of the

figures in these annual reports, no question is presented. Each such report was approved by the Chancery Court without objection, save the one filed for the annual period ending July 31, 1949.[3] In that report the Receiver stated: that under the County Court order of January 14, 1924, taxes were to be collected through 1948; that he had so collected the taxes and some property holders had paid in full the entire twenty-five annual installments; that other property holders had defaulted and the District held title to approximately 13,000 acres of land purchased at the foreclosure sales for delinquent assessments; that there were no more taxes to be collected under the 1924 levying order; that he had only $18,282.47 on hand in cash, together with the title to 13,000 acres of land, and the unforeclosed delinquencies for 1947 and 1948 assessments;[4] and that the unpaid bonds of the District are $175,772.08 and the unpaid interest on the bonds is $132,380, making a total of unpaid bonds and interest of $308,152.08. The Receiver asked directions of the Chancery Court and, in effect, sought permission to be allowed to distribute the lands and the money on hand to the Bondholders *pro rata,* and thereby close the receivership and liquidate the District. The 1949 report precipitated this litigation.

The Trustee[5] for the Bondholders, together with parties holding the greater portion of all the outstanding bonds, filed pleadings in the Chancery Court, naming as defendants the Receiver, Blocker, and also ten Landowners in the District as a group to represent and defend for all the Landowners.[6] The pleadings of the Trustee and the Bondholders alleged: that all the assessed benefits had not been levied— i. e., only 93.35 per cent had been levied by the County Court order; that the assessment of benefits bore interest, as provided by Act 177 of 1913 and Act 467 of 1919; that the Chancery Court should direct the Receiver to apply to the County Court for a levying

---

[3] One subsequent report is still pending.

[4] In the oral argument before this Court, it was stated by all parties that these delinquencies had now been foreclosed.

[5] The original Trustee had resigned, and J. Ripley Greer became the substitute Trustee. His capacity, as such, is not questioned.

[6] The sufficiency of such number to make a representative defense for all is not questioned.

order on the balance of the unused benefits and on the interest of the benefits; and that the Receiver, from collections so made, should pay the outstanding bonds and interest thereon.

The Receiver, by his answer, presented these issues:

(1) That either by cash, or by taking of property, he had collected all the twenty-five annual installments of tax that had been levied and the power to tax had been exhausted; and

(2) That interest on the benefits was calculated and included in the assessed benefits and cannot be again collected.

The defendant Landowners adopted the Receiver's defenses and also presented these additional issues:

(3) That 6.65 per cent of the original assessed benefits is all that could possibly remain due on the assessed benefits on any tract of land;

(4) That the Bondholders' right to recover on bonds and interest is limited (by § 37-209, Ark. Stats.) to those bonds which became due within five years before the filing of the Bondholders' petition in this case (which date was November 2, 1949.);

(5) That the right to collect any deferred installment of interest on the benefits is limited by § 20-1128, Ark. Stats.) to the interest due within three years before the filing of suit therefor; and

(6) That "the Receiver . . . holds . . . more than 10,000 acres of land . . . bought . . . in at foreclosure . . . for delinquent taxes . . . and said lands should be ordered sold . . . prior . . . to any additional levy of taxes . . . . ."

A trial in the Chancery Court resulted in an opinion by the Chancellor, stating in part:

". . . that in the place of asking for an additional levy which would result in another forfeiture of the 13,000 acres of land and an additional debt to be later

retaxed, . . . it is the duty of the bondholders to take the assets of the District and take such remedy as they desire or may be entitled to under the law to dispose of the assets and pay their debt.''

The decree of the Chancery Court, pursuant to the foregoing opinion, dismissed the pleadings of the Trustee and the Bondholders; and they have appealed, being here styled appellants. The Receiver, Blocker, and the Landowners are here styled appellees. Each of the said six issues, made by the pleadings of the Receiver and the Landowners, is presented here; and we will discuss and decide such of the issues as require decision at this time.

I. *Appellees' Claim: "Power to Tax is Exhausted."* This is the Receiver's first issue. The appellees quote § 21-542, Ark. Stats: "The county court shall . . . enter . . . an order . . . , providing that there shall be assessed upon the real property of the district *a tax sufficient to pay the esimated cost of the improvement with ten (10) per cent added for unforeseen contingencies: . . . "* and urge that the italicized language fixes the maximum of tax liability. Appellees claim: that the proceeds of the $450,000 bond issue went to pay the cost of the improvement; that the full amount of interest on that bond issue (as calculated at the time of the levying order) was $407,522.50, making a total of bond issue and interest of $857,522.50; that the 10 per cent. of the last mentioned figure is $85,752.25; and that the bond issue, together with interest to pay all bonds at maturity thereof, and also with the 10 per cent. added for unforeseen contingencies, was thus $943,274.75. This last named figure—say the appellees—is the maximum figure which the law—*i. e.,* § 21-542, Ark. Stats., as quoted—allows to be collected for the improvement. Therefore, the appellees most earnestly urge that when the County Court order of January 14, 1924, levied a tax of $943,274.75 on the assessed benefits, such order exhausted the power of the County Court to act; and that the Landowners cannot be taxed anymore for the said improvement. The Receiver's brief states the appellees' contention in this language:

266

". . . The levy here is expressly shown to be the amount necessary to pay the cost of the improvement, with interest on the bonds of the District, plus ten per cent for unforeseen contingencies. The levy, literally and completely, complies with the terms of the statute, being in the amount provided by the statute; and is a complete limitation upon the amount of assessments the property shall pay for the improvement."

There is a clear fallacy in the appellees' argument. The schedule of maturities of bonds, as made in 1924, has not been fulfilled by the District, with the result that the interest has continued to accrue on the unpaid bonds. The Statute (§ 21-540) says: ". . . the interest to accrue on account of the issuing of said bonds shall not be construed as a part of (the cost of) construction . . . ." Since the bonds bore interest until paid, the interest on the bonds until paid can be added to the cost of the improvement, plus the 10 per cent. for unforeseen contingencies, before any question can arise that "the power to tax has been exhausted." In other words, § 21-542, Ark. Stats., and the case of *K. C. So. Ry. Co.* v. *Road Imp. Dist. No. 6,* 139 Ark. 424, 215 S. W. 656, 217 S. W. 773, relied on by the appellees, afford them no support under the facts in this case.

The bonds herein were duly and legally issued; and the Statute, and also the bonds and mortgage to the Trustee, have pledged all of the assets of the District to the payment of the bonds and interest. Section 21-554, Ark. Stats., says in part:

"All bonds issued by commissioners under the terms of this act (§§ 21-553—21-555) shall be secured by a lien on all lands, railroads and tramroads in the district, and the board of directors shall see to it that a tax is levied annually, and collected under the provisions of this bill, so long as it may be necessary to pay any bond issued or obligation contracted under its authority; . . ."

Also, § 21-555, Ark. Stats., says:

"To the payment of both the principal and interest of the bonds to be issued under the provisions of this act,

the entire revenues of the district arising from any and all sources, and all real estate, railroads and tramroads subject to taxation in the district are by this act pledged; . . ."

Each bond issued by the District recited:

". . . For the faithful performance of all covenants, recitals and stipulations herein contained, for the proper application of the proceeds of the taxes heretofore or hereafter levied, and for the faithful performance in apt time and manner of every official act required and necessary to provide for the prompt payment of the principal and interest of this bond, as the same matures, the full faith, credit, assessment of benefits heretofore or hereafter assessed, and all other resources of said drainage district are hereby irrevocably pledged."

Furthermore, the mortgage of the District to the Trustee to secure the bond issue recites:

". . . the said McKinney Bayou Drainage District . . ., doth heerby pledge, assign, transfer, mortgage and set over to the said . . . Trustee, all uncollected assessments levied by the County Court upon the real property, public roads, railroads and tramroads in said District, together with all assessments that may hereafter be levied thereon, . . ."

Thus there is no escape from the conclusions: (a) that the District has, by law and by fact, pledged all its assets, as well as its full faith and credit; and (b) that the Statute allows the pledging of all the benefits and interest thereon. It is admitted by the pleadings of the Landowners, and clearly established by the evidence, that the total tax levied to date is an amount equal to 93.35 per cent. of the assessed benefits; so unquestionably there remains an amount equal to 6.65 per cent. of the assessed benefits, plus also interest in some amount on the assessed benefits. With its full faith and credit pledged, and with these assets remaining, the District cannot claim that its power to tax has been exhausted.

An enlightening case is that of *Chicago Mill & Lumber Co.* v. *Drainage District No. 17*, 172 Ark. 1059, 291

S. W. 810. In that case a large property holder, who had paid taxes regularly, sought to enjoin the District from obtaining an additional levy to pay bonds which had defaulted because other property holders had failed to promptly pay their taxes. The similarity between that case and the case at bar is quite striking. We do not now review it in detail, but we cite it as a case worthy of study on the issue here discussed.

Finally, on this point, we consider § 21-550, Ark. Stats., as applicable:

"If the tax first levied shall prove insufficient to . . . pay the bonds, both principal and interest, . . . the board shall . . . report the amount of the deficiency . . . and the county court shall thereupon make . . . further . . . levies . . ."

Thus, we hold that the "power to tax" has not been exhausted and that the Chancery Court should direct the Receiver to proceed for the Board under § 21-550, Ark. Stats.

II. *Interest on Assessed Benefits.* This is the secon issue presented by the Receiver. Act 279 of 1909—commonly called "The Drainage District Act"—did not contain language sufficiently clear, so the Legislature adopted Act 177 of 1913 which amended and supplemented the 1909 Act, and provided in § 10:

"When assessments of benefits are made in drainage and other improvement districts, the land owners shall have the privilege of paying the same in full within thirty days after the assessment becomes final. But all such assessments shall be made payable in instalments, so that not more than twenty-five per cent shall be collectible in any one year against the wishes of the land owner, and in the event that any land owner avails himself of this indulgence, the deferred instalments of the assessed benefits shall bear interest at the rate of six per cent per annum, and shall be payable only in instalments as levied.

"The levy of the assessment may be made by way of proportional amounts of the total assessed benefits,

and interest need not be calculated until it is necessary to do so to avoid exceeding the total amount of benefits and interest.''

Then by Act 467 of 1919 the Legislature further provided:

''Where assessments of benefits have been made in drainage districts organized either under general or special acts, the property owner shall have the right to pay such assessments in full within sixty days after the passage of this Act, but if he does not avail himself of this privilege, the assessment of benefits shall bear interest at the rate of six (6%) per cent per annum, and shall be payable only in installments as levied. The interest need not be computed until necessary to be sure that the collections have not exceeded the total amount of benefits and interest; or the interest may be first collected.''

With the above quoted laws in effect, the McKinney Bayou Drainage District was organized in 1923 and issued its bonds in 1924. The resolution of the District, adopted on January 14, 1924, as previously copied, after providing in detail for the percentage of money to be collected each year, concludes with this language:

''Said collections to be credited first upon the interest accruing upon said levy of the assessment of benefits.''

The levying order of the County Court, as previously copied, likewise concludes with the words:

''. . . which collections shall be credited first upon the interest accruing upon the said levy.''

Furthermore, when the Commissioners filed the petition for receivership of the McKinney Bayou Drainage District in 1928, they prayed the Chancery Court that a Receiver be appointed to collect the tax, with the ''collections of said tax to be credited first upon the interest accruing upon said levy of the assessment of benefits''. That interest can be collected on assessed benefits in a District like the one here involved is established by a

long line of cases, of which the following are only a few:[7] *Oliver* v. *Whittaker,* 122 Ark. 291, 183 S. W. 201; *Jones* v. *Fletcher,* 132 Ark. 328, 200 S. W. 1034; *Skillern* v. *White River Levee District,* 139 Ark. 4, 212 S. W. 90; *Pfeiffer* v. *Bertig,* 141 Ark. 531, 217 S. W. 791; *Summers* v. *Cole,* 144 Ark. 494, 223 S. W. 721; *Phillips* v. *Tyronza & St. Francis Road Imp. District,* 145 Ark. 487, 224 S. W. 981; *Chicago Mill & Lumber Co.* v. *Drainage District No. 17,* 172 Ark. 1059, 291 S. W. 810; *Richey* v. *Long Prairie Levee District,* 203 Ark. 1, 155 S. W. 2d 582; and *Flat Bayou Drainage District* v. *Atkinson,* 217 Ark. 575, 232 S. W. 2d 76.

The appellees seem to concede that it is legally possible for benefits to bear interest; but claim that in the case at bar the interest on the benefits was actually included in the assessed benefits; and thereby the appellees seek to bring this case within the proviso found by Act 285 of 1941; and claim that they are entitled to the benefits of the said proviso in the 1941 Act. In the case of *Holthoff* v. *State Bank,* 208 Ark. 307, 186 S. W. 2d 162, we discussed the 1941 Act in the last section of that opinion where the same contention was made as here.

We find no merit to appellees' contention. In the case at bar the assessors left no written memorial to the effect that interest was included in the assessment of benefits, and no one directly testified to such effect. Rather, the entire defense is based on inferences to be derived from calculations. An examination of the assessed benefits on certain delinquent tracts of land, as shown in the transcript, rather convincingly reveals that the benefits were assessed on a "flat acreage basis" and not on any calculation of cost of improvement plus interest on benefits: some tracts were assessed benefits of $40 an acre, others at $50 an acre. From that part of the list of assessments found in the transcript, we

---

[7] It is true that some of these cases involve Districts organized under Special Acts, but each of such Special Acts contained provisions sufficiently similar to Act 177 of 1913 and Act 467 of 1919 as to make the case worthy of citation on the point here at issue.

are impressed with the fact that the benefits were assessed on a "flat acreage basis".

But irrespective of the foregoing, a complete answer to appellees' contention is found in our holding in *Holthoff* v. *State Bank, supra,* (frequently referred to as the "Kersh Lake Case"), wherein we used the following language in disposing of a contention similar to that now made by appellees:

"We furthermore point out that the certificates of indebtedness were issued by the district in 1919, and some of them still remain unpaid. The 1919 Act allowed interest. The 1941 Act could not defeat the interest while obligations were outstanding based on the collectibility of the interest. The Legislature in 1941 could not pass an act that impaired the obligation of the contract existing when the certificates were issued. In *Broadway-Main Street Bridge District* v. *Mortgage Loan & Insurance Agency,* 195 Ark. 390, 112 S. W. 2d 648, we said:

" 'Interest of bondholders in assessments could not be impaired without the consent of all of them.' To the extent that the collection of interest on the benefits is necessary to pay the outstanding indebtedness of the district, the 1941 Act could have no application."

III. *Limitations Against the Bonds and Interest.* This is issue No. (4) of the Landowners. They make their contention in this language:

"All bonds matured on the first day of August, 1928 to 1948. Coupons, in the amount of $27.50 each, matured on the first day of February and the first day of August of each year. The within suit was filed on the 2d day of November, 1949.

"Defendant landowners contend that all bonds and coupons maturing five years prior to the filing of this suit are barred by the statute of limitations, Ark. Stats. § 37-209, which provides:

" 'Action on promissory notes, and other instruments, not under seal, shall be commenced within 5 years after the cause of action shall accrue, and not after.' "

The Receiver, Blocker, did not plead Limitations. Instead, his pleading asserted:

"It is true that the Receiver has at all times recognized the validity of all outstanding bonds issued by the District and has not questioned their validity."

The quotation is true in every sense: because in each annual report the Receiver listed as a debt of the District the total of bonds and interest outstanding; and (save only the 1949 report here involved) the Chancery Court approved each such report, thereby placing the stamp of judicial approval on the continued acknowledgment of the bonds and interest as legal and valid obligations of the District.

Furthermore, in 1941 some of the Bondholders intervened in the receivership proceedings and asked that they have payment of their bonds and interest coupons, some of which were past due since 1930. The Chancery Court, in refusing to order preferential payment of said bonds and coupons, stated in the 1941 decree:

"That said bonds and interest coupons are the legally issued and valid, subsisting and outstanding obligations of said drainage district, payable and receivable by the Receiver of this court as other outstanding bonds and interest coupons of said district."

Thus the Receiver, with the approval of the Chanvery Court, has all along recognized the bonds and interest coupons as valid, subsisting obligations. In the case of *Street Improvement District* v. *Mooney*, 203 Ark. 745, 158 S. W. 2d 661, the Commissioners had filed annual reports recognizing the validity of a certain claim. Later, when the District sought to plead Limitations against such claim, this Court denied the plea since the recognition of the claim in each annual report "established a new period from which the statute of limitation began to run". The holding in the reported case is applicable here. McKinney Bayou Drainage Dis-

trict, acting through its Receiver[8]—appointed by the Chancery Court on the petition of the Commissioners of the District—has, with Chancery Court approval, regularly and annually up to and including 1948, acknowledged all unpaid bonds and interest coupons as valid debts of the District. The Landowners cannot plead Limitations against the Bondholders, because the Statute has been tolled up to and including the approval of the 1948 report.

IV. *Limitations Against Collection of Interest on Benefits.* In their answer in the Chancery Court, the Landowners stated as regards interest on benefits:

"That the right to collect deferred installments aforesaid which became due more than three years prior to the filing of the petition herein is barred by the provisions of Ark. Stat. § 20-1128."

By this pleading we understand that the Landowners are claiming that if the County Court order of 1924 levied interest on the assessment of benefits, then all such uncollected interest is barred which matured more than three years prior to filing suit therefor. Such plea poses the interesting question of the correct formula for computing interest on assessed benefits when the collection rate for each annual payment is less than six per cent. Several different contentions could be stated and argued;[9] but we need not discuss them in the case at bar because they are not presented as justiciable issues. This is a proceeding in which the Bondholders and Trustee petitioned the Chancery Court to instruct the Receiver to apply to the County Court for an order of collection.

[8] In *Gossett* v. *Fordyce Lumber Co.*, 181 Ark. 848, 28 S. W. 2d 57, we said: "So it will be seen that the Receiver, for the time being, steps into the shoes of the Board of Commissioners and acts for it."

[9] Attention is called to the following cases as being some that bear on the calculation of interest on assessed benefits in some instances: *Oliver* v. *Whittaker*, 122 Ark. 291, 183 S. W. 201; *Jones* v. *Fletcher*, 132 Ark. 328, 200 S. W. 1034; *Skillern* v. *White River Levee District*, 139 Ark. 4, 212 S. W. 90; *Pfeiffer* v. *Bertig*, 141 Ark. 531, 217 S. W. 791; *Summers* v. *Cole*, 144 Ark. 494, 223 S. W. 721; *Phillips* v. *Tyronza & St. Francis Road Imp. District*, 145 Ark. 487, 224 S. W. 981; *Chicago Mill & Lumber Co.* v. *Drainage District No. 17*, 172 Ark. 1059, 291 S. W. 810; *K. C. Ry. Co.* v. *Road District*, 139 Ark. 424, 217 S. W. 773; and *Richey* v. *Long Prairie Levee District*, 203 Ark. 1, 155 S. W. 2d 582.

When a property holder makes the plea of Limitations in a suit against him to collect such interest, there will be a justiciable issue before us on such plea of Limitations.

## CONCLUSION

There remain for consideration only issues No. 3 and No. 6 presented by the Landowners: these relate to the 6.65 per cent. of uncollected benefits and the disposition of the lands held by the Receiver; and they blend into the points already discussed. Since there are uncollected benefits and some interest thereon the Chancery Court should direct the Receiver to apply to the County Court for an order of collection; and the County Court may make the collection rate per annum at such a figure or percentage and over such period of years as may be deemed wise and best. Also the Chancery Court should direct the Receiver to ascertain and report the wise way to dispose of the lands on hand, so that the most money may be realized therefrom: in short, the Chancery Court should direct the Receiver to undertake the liquidation of the debts of the District in accordance with this opinion.

The decree of the Chancery Court is reversed and the cause is remanded with directions to enter a decree and to proceed in accordance with this opinion.

Justice GEORGE ROSE SMITH not participating.